ENGLISH *v.* CHICAGO, M. & ST. P. RY. CO.[1]

*(Circuit Court, D. Minnesota.* September 11, 1885.)

1. MASTER AND SERVANT—DANGEROUS WORK OUTSIDE OF REGULAR EMPLOYMENT — LIABILITY OF MASTER FOR INJURY TO SERVANT — KNOWLEDGE OF DANGER.

Where a master commands a servant to go outside of his regular employment to do a work which is attended with special danger, and the servant, in response to the specific commands of his master, goes and does the work in the way and at the time directed, the fact that the servant knew it was dangerous does not exonerate the master from responsibility, or make the servant guilty of contributory negligence, unless the character of the danger be so patent and so extreme that no one but a foolhardy, reckless man would attempt it.

2. SAME—CONTRIBUTORY NEGLIGENCE—DISCRETION AS TO TIME AND MANNER OF DOING WORK.

Where a servant has equal means of knowing the danger, so that the master and servant stand equal in that respect, and the servant is not specifically commanded as to the time and manner in which the work may be done, but is told to do a particular thing, and has such discretion that he can have some control over the means, time, and manner of doing the work, then, unless he does it in a way and with the means which will be safest, he is guilty of contributory negligence.

Motion for New Trial.

*Thomas Wilson,* for plaintiff.

*W. Gale* and *Bigelow, Flandrau & Squires,* for defendant.

BREWER, J. . This case was tried before Judge NELSON and a jury, and a motion is made for a new trial, and was argued before both Judge NELSON and myself. I always have a little hesitation in hear-

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

ing a motion for a new trial of a case which has been tried before some other judge, for the reason that I think no one but the trial judge can really fully understand the merits of the case as developed by the witnesses. He has an opportunity which no other judge can have to determine whether upon the whole case substantial justice has been done, and the mere testimony in the record, when read, does not make the impression that testimony falling from the lips of living and present witnesses does; and if Judge NELSON and myself had not agreed in the conclusion which he asked me to announce, I should have hesitated a good deal about passing an opinion on this case; but after talking the case over, and reading the testimony as transcribed by the stenographer, and also in the light of his personal recollection, we have come to the following conclusion, which I am requested to announce:

Briefly, the facts are these: The intestate, Mr. English, was employed as a car-repairer by the defendant. On the day of the accident he was sent by his foreman, Mr. Goodman, to go to a water-tank and repair it. That water-tank stood upon standards 11 or 12 feet in height. At the summit of these standards, and at the base of the tank, there was a deck, octagonal in shape, encircling the bottom of the tank, sloping slightly from the tank, so that water would pass off. There was some little dispute as to the amount of deflection, perhaps three-fourths of an inch to one and one-half inches to the foot. The deck was in the narrowest place about 21 inches wide, and at the octagonal points a little wider than that,—about 30 inches. The work to be done required the workman to go outside the tank and let the water off, and then get inside and fix a valve, which was done by replacing a bolt and screwing on a nut. The water was taken out of the tank by four holes, closed by plugs,—two on each side. They were reached by walking around on this narrow deck.

There is a dispute in the evidence as to whether the deceased, Mr. English, was employed to do that work. It is very evident from the testimony this was not within the ordinary work of a car-repairer. There is testimony that when Mr. Goodman, the foreman, first employed intestate it was with the understanding that' this was part of the work he had to do. But as the jury, by their verdict, seem to have found against that testimony, that may be laid outside of the case, and it must be assumed that this was not part of his business, and that he was sent by that foreman to do a work outside his regular business, and one of danger. You can easily understand that where there is a little deck or shelf along the base of a water-tank, sloping outwards, in the narrowest place 21 inches, and in the widest place two feet five or six inches, with no railing round the body of the tank to hold on by, and with nothing to support a man in case he lost his balance, at any time of the year it would have been a proceeding of some risk to walk round on that shelf and drive these plugs in, and a work of especial risk in the winter-time, for this

was in December, when a man might expect that there would be ice or snow on this sloping deck, which, of course, made it the more dangerous. If a man slipped there was nothing for him to hold on to. I do not think it needs any words to show that such a tank so circumstanced, with such a deck upon which to work, without any means of support or protection, was a dangerous place. And when the company called upon the deceased to go onto that place and fix that tank, it sent him into a position of danger. As the testimony shows, the deceased and a man by the name of McCarty were notified, in the morning, to go and make these repairs as soon as a certain train passed at 11:50. They went, knocked the plugs out so as to let the water flow out of the tank, and then went to dinner, and the water flowed out while they were gone. After dinner they went back. First they went inside and fixed the valve; then one of them went one side of the tank to put in two plugs, and the other on the other side to put in the two other plugs. There was ice on the deck where the deceased went, and he stepped on it, slipped, fell to the ground, and was killed.

The company was negligent, as I said, and there is no question but it was grossly negligent. It would have been a very simple thing to have put an iron rail on the outside of that tank, which a man might hold on to, and the company ought to have put it on.

But the question, and the only substantial question in the case, as counsel well say, is whether the deceased was guilty of contributory negligence. I take it the law, as stated by counsel for the plaintiff, is supported by many authorities, and is correct, that where a master commands a servant to go outside of his regular employment to do a work which is attended with special danger, and the servant, in response to the specific commands of his master, goes and does the work in the way and at the time directed, the fact that the servant knew it was dangerous does not exonerate the master from responsibility, or make the servant guilty of contributory negligence, unless the character of the danger be so patent and so extreme that no one but a foolhardy, reckless man would attempt it. For instance, where an engineer was told to take his engine in advance of a regular train over a track which he knew to be dangerous, and to keep out of the way of a coming train, and the engineer did so, and was killed, the fact that he knew the track was dangerous was held not to be such a fact as would render him guilty of contributory negligence. He had a specific command to take his engine and get to a certain point in advance of a following train. He had one of two alternatives: to obey the order, or leave the road. And, as the court say, it is not right that a burden should be cast on the employe, either to say "I will not do the work, but quit the service," or else be adjudged guilty of contributory negligence should an accident happen. But that rule has two or three limitations, one of which, we think, is applicable to this case, and is this: that where a servant has equal means of knowing the danger, so that the master and servant stand equal in

that respect, and the servant is not specifically commanded as to the time and manner in which the work may be done, but is told to do a particular thing, and has such discretion that he can have some control over the means, time, and manner of doing the work, then, unless he does it in a way and with the means which will be safest, he is guilty of contributory negligence. Thus, take an illustration from the case which I have just cited, where the engineer was told to run his engine over the track and to keep out of the way of a following train. He had no alternative but to run his engine at such a speed as would keep it out of the way of this train. But suppose he was told to take his engine and run it to such a place over a track which both parties knew to be dangerous, and the time at which he was to reach his destination was not specified, so that the rate of speed was reasonably within his control, and he, instead of going five miles an hour, which would be safe, goes at 30 miles an hour, which is unsafe, and on the trip he is injured, he cannot say, "I was told to make that trip, and although I went at that rapid speed I am not guilty of contributory negligence." Wherever he has within his control the manner of doing a thing, and the time of doing it, and the means of securing safety, he cannot do it in the quickest time and in the shortest manner, and neglect all means of security to himself. If he does so, he elects to take the risk.

Now, in this case, perhaps, the testimony is not very full upon that matter. The testimony of Mr. Goodman, the foreman, is that he told intestate to go and fix the tank, and he went and took the plugs out before dinner, and then after dinner went to fix the tank. When the foreman came to the tank the valve had been fixed, and the men were starting round on the deck to put in the plugs; and the first he saw of deceased he was picking the ice off with his hammer, and he called to him. Now, if the master or foreman had been standing there, and, as he came out of the tank and started to walk on that side, had said, "Don't wait to take the ice off,"—specifically commanded him to walk around on the deck without securing a ladder, or picking the ice off, or taking any other precaution for his safety,—it might be said that deceased was commanded to do that act in a specific way, with no discretion. But as Mr. Goodman says he did not come back until 15 or 16 minutes after dinner, it seems that English had had time to take precautions about doing this work. It does not appear from the testimony as to whether a ladder could or could not have been obtained; but he might have taken time to do something; he might have driven in some nails for his protection, or used other methods which would have afforded him protection. The testimony is silent upon this point, but it appears that there was no specific direction; nor was English commanded to do this in a specified way in a specified time. It is very clear from the testimony that he might have taken a good many precautions to protect himself, without infringing upon the commands which were given to him; but, instead of that,

he walked round, stood on a slippery place, and fell. Under these circumstances, can it be said that he was not guilty of contributory negligence? There is nothing to show that there was any stress laid upon him to do it within a particular time, or to do it in a particular way. There is nothing to show that he did not have within his power the means to protect himself as against the risk from this employment. He chose to take the risk, and did not seek to avail himself of the means which are open to every one; and it can hardly be said that he was free from responsibility. It is true that McCarty says, in a general way, that he was ordered to do that work; but he does not specify, as we understand the testimony, time or circumstances.

Then the court—properly, I think—instructed the jury that if the danger was equally known to both parties,—perhaps the limitation which I have suggested ought to be attached to it,—it could not be said that he was free from contributory negligence. This is one of the dangers whose existence and extent every one has equal capacity for determining. A slippery wall with ice on it, with no support,—you do not require to have any technical knowledge, or to be skilled in machinery, or to be learned in the law, to know that there is danger in walking thereon. When I walk on a shelving place I know it is dangerous, and if there is ice on it there is more danger, and if there is nothing to hold on by that makes it still more dangerous. Every one knows that. It is not as though the master had sent the servant among some machinery of whose danger only m ʌ ᴧ nic may have full knowledge.

The motion for a new trial will be granted.