Coos,
July 19, 1904.

## MURPHY *v.* GRAND TRUNK RAILWAY CO.

A servant who voluntarily continues in an employment, with knowledge of an increased peril created by the master's negligence or due to natural causes, assumes the risk of dangers arising therefrom.

If a servant undertakes to make repairs which are rendered necessary by defects due to the master's negligence, he assumes the risk of all dangers incident to such work which are known to him, or which ordinary care would disclose.

An employee who is required by the master's rules to ascertain the cause of an accident is chargeable with a knowledge of all defects contributing thereto which ordinary care in examination would have disclosed.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. At the close of the plaintiff's evidence the defendants' motion for a nonsuit was denied, and they excepted. Transferred from the November term, 1903, of the superior court by *Stone,* J.

The plaintiff's evidence tended to prove the following facts: At the time of his injury the plaintiff had been employed by the defendants for about seven years, and had served as conductor for three and one half years. On October 30, 1901, his run was from Portland, Maine, to Island Pond, Vermont. He started from Portland with a freight train of sixty cars, at about half past five in the morning. He had nothing to do with making up the train. A knuckle (a part of an automatic coupler) on the sixth car from the rear of the train was so defective that the train separated when about four miles from Portland, and near Falmouth, the immediate effect of the separation being to set the brakes on nearly every car. This caused two other couplings to separate, breaking the train into four sections. The first section consisted of one car, the second and third sections of from twenty to thirty cars each, and the rear section of five cars and the caboose. Such accidents are not uncommon. When one happens, it is the duty of the conductor to first send out flagmen and then to learn the cause of the accident and remedy it, if possible. In doing this work, the whole train crew act under the conductor's orders. When the wreck occurred the plaintiff sent the rear brakeman back to flag trains, and then walked to the locomotive and directed the engineer to put the forward car on the Falmouth siding. While this was being done he fastened the second and third sections together with a chain, and directed the engineer to draw them upon the "passing track" at Falmouth. An attempt to execute this order having failed, the engineer drew the second section upon the passing

track, and then backed the locomotive down and chained it to the third section. At this juncture another train arrived, and the plaintiff decided to have the locomotive which drew the latter push the third and fourth sections of his train upon the passing track. In the execution of this design, he walked back to the rear of his train and gave the necessary orders to the rear brakeman, who signaled to the engineer, and the latter coupled his locomotive to the fourth section. The plaintiff and brakeman then mounted the car where the first break occurred (but not that equipped with the defective coupler), and the section was pushed up to where the third stood. The plaintiff then directed the brakeman to couple the two sections and started toward the head of the train to disconnect the locomotive. About the time he reached his destination the two sections came together. The plaintiff thought the coupling was made, but he did not stop to see whether it was or not, nor did he give the engineer the "stop" signal usually given when work is to be done between cars, but stepped in between the locomotive and car to which it was attached, for the purpose of taking off the chain. The coupling had not been made, and when the brakeman learned this he gave the engineer the signal to "slack back." The brakeman looked at the coupler on the end of the third section, found it defective, fixed it, and gave the engineer the signal to come ahead. At this attempt the coupling was made. When the cars came together the shock moved the whole of the third section ahead, caught the plaintiff between the forward car and the locomotive, and caused the injuries complained of. At the time of giving the last signal, the brakeman thought he saw the plaintiff standing beside the track near the locomotive; but the person he in fact saw was the head brakeman. The plaintiff knew that automatic couplers sometimes fail to unite on the first impact, and that if a stop signal was given to the engineer he would not start until he was signaled to do so.

*Daniel J. Daley, Herbert I. Goss*, and *Drew, Jordan, Buckley & Shurtleff*, for the plaintiff.

*Clarence A. Hight* and *Leroy L. Hight* (both of Maine) and *Chamberlin & Rich*, for the defendants.

YOUNG, J. The only ground on which the plaintiff claims to recover is the defendants' failure to furnish him with suitable instrumentalities with which to do his work; so the only questions raised by the defendants' motion are whether there was any evidence from which it could be found (1) that the defendants' failure to equip this car with a suitable coupler was the legal cause of

his injuries, (2) that the danger from using this coupler in the condition it was in at the time of the accident was not a risk he assumed, and (3) that he was free from fault at that time. Only one of these questions will be considered, for although whether the plaintiff was free from fault and whether the cause of a dangerous situation is the legal cause of an accident that results from that situation are both questions of fact (*Ela* v. *Cable Co.*, 71 N. H. 1; *Aldrich* v. *Railroad*, 67 N. H. 380; *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 164), it will not be necessary to examine the evidence upon either point; for if it is conceded that the defective coupler was a contributing cause and not merely the occasion of the accident, and that he was free from fault, he cannot recover because it conclusively appears that the danger from using the coupler in the condition it was in at the time of the accident was a risk he assumed.

The law imposes on the servant the risk of all the dangers of the employment of which he either knows, or would have known if he had used ordinary care. This includes the risk of the dangers which arise from the use of defective instrumentalities and from the negligence of fellow-servants. *Galvin* v. *Pierce*, 72 N. H. 79; *Hill* v. *Railroad*, 72 N. H. 518; *O'Hare* v. *Company*, 71 N. H. 104; *McLaine* v. *Company*, 71 N. H. 294; *Fifield* v. *Railroad*, 42 N. H. 225, 240.

Although a servant does not assume the risk of a danger of which he did not learn until so soon before he was injured that after learning of it he could not have left the service in safety (*Olney* v. *Railroad*, 71 N. H. 427), it is entirely immaterial when he learned of the danger, if after he knew of it he could have left the service. If he remains after he knows of it, the law imposes on him the risk incident to remaining. *Henderson* v. *Williams*, 66 N. H. 405. Neither is it material how the dangerous situation was created; for if a servant continues with the master after he knows of the danger, the law imposes on him the risk incident to remaining, whether the dangerous situation arose from natural causes, or was created by the master's negligence. *Leazotte* v. *Railroad*, 70 N. H. 5.

The breaking apart of the train caused the plaintiff no injury. After the several sections came to rest he stepped to the ground unharmed. The original dangerous situation created by the defendants' negligence—the operation of a train containing cars connected by a defective coupler—was ended. Assuming that the separated train also constituted a dangerous situation due to the defendants' negligence, the plaintiff ran no risk unless he elected to engage in the work of reassembling the train. If the danger was due to the defendants' failure to comply with the obligations

of their contract, the plaintiff, having performed his duty of protecting his train under the rules, would be under no obligation to engage in the work of correcting the results of their negligence, unless his contract of employment required him to reassemble the train regardless of the cause of its breaking apart. He would have both a legal reason and a physical opportunity to refuse the service.

Whether or not it was his duty as a conductor to endeavor to reassemble the train, broken apart because of the defendants' negligence, is immaterial. If he remained because he was willing to waive the defendants' breach of contract, or if it was because his contract required him to remain under the circumstances, the result would have been the same. In either event the law would impose on him the risk of all the dangers incident to assembling his train in the condition the cars were in at that time, of which he either knew, or would have known if he had used ordinary care. So the only question which it is necessary to consider, to determine whether he assumed the risk, is whether or not he knew of the danger which was the immediate cause of his injury.

The evidence shows that the direct causes of his injury were the brakeman's failure to find out where the plaintiff was before he gave the engineer the signal to start his engine, the engineer's failure to ring the bell before he started, and the plaintiff's failure to give the engineer a stop signal; for, notwithstanding the defective coupler, no accident would have happened if he had given the engineer a stop signal before he stepped between the cars, or if the engineer had rung his bell before he started his engine, or if the brakeman had found out where the plaintiff was before he gave the engineer the signal to go ahead. All these concurred, both in point of time and causation, to produce the injury, and there is no evidence from which it could be found that the plaintiff did not know of and fully appreciate the danger that would naturally result from the happening of any one or all of them; so it must be held that the causes of his injury were the risks he assumed.

Conceding that the defective coupler was a contributing cause and not merely the occasion of the accident, there is no force in the plaintiff's contention, that because he did not have actual knowledge of the particular defect which caused the coupler to separate and wreck the train he did not assume the risk incident to using the coupler in the condition it was in when the accident happened; for when it is a person's duty to know anything, the law will charge him, not only with all the knowledge he has in respect to the matter, but also with all he would have had if he had used ordinary care. *Davis* v. *Railroad*, 70 N. H. 519. The

rules made it the plaintiff's duty when there was an accident to find out what caused it. So it was his duty to examine the couplers which had parted before he used them, and there is no evidence from which it could be found that if he had used ordinary care in examining them he would not have discovered the defect; so he must be held to have known that the coupler was defective when he ordered the brakeman to use it.

*Exception sustained : verdict set aside.*

All concurred.