## The City of Fort Wayne v. Patterson, Administrator.

[No. 3,100.   Filed November 27, 1900.]

MASTER AND SERVANT. — *Negligence.* — *Complaint.* — In an action against a city for damages, the complaint set forth that plaintiff's intestate was employed by defendant city to assist in the digging of a trench six and one-half feet deep, preparatory to the laying of water-mains; that while intestate was thus engaged at a point where the ground was compact and hard, he was directed by defendant's superintendent to go to another point, where the trench had been dug by other workmen, to dig bell-holes in the bottom of the trench, and where the banks or walls of the trench were composed of· earth of a loose and unadhesive character, which fact was unknown to deceased, but well known to the defendant; that without any fault on the part of the deceased the trench caved in, causing bodly injuries from which death resulted.   *Held,* that the complaint stated a good cause of action.   *pp. 549-556.*

City of Ft. Wayne *v.* Patterson, Adm.

MASTER AND SERVANT.—*Answers to Interrogatories.*—*General Verdict.* —*Conflict.*—Where an employe of a city was digging bell-holes at the bottom of a deep water-main trench dug by other workmen, and was killed by the caving in of the walls because not properly braced, answers to interrogatories propounded to the jury showing that the deceased was experienced to some extent in such work, and that by the exercise of his senses of sight and feeling he could have learned of the danger, are not in such conflict with a general verdict in favor of the plaintiff as to render such general verdict erroneous *pp. 556, 557.*

SAME.—*Contributory Negligence.*— *Safe Place to Work.*—Where a person employed by a city to assist in the digging of a trench six and one-half feet deep, preparatory to the laying of water-mains, was engaged at the work at a point where the walls of the trench were solid and firm, and was ordered to another part of the trench, dug by other workmen, where the walls of the trench were composed of gravel and loose earth, the fact that in getting from one point to the other the employe walked along the bottom of the trench and had good opportunity to notice the difference in the character of the walls was not sufficient to charge him with contributory negligence, since he had a right to assume, in the absence of warning or notice, that the city had furnished him a safe place to work. *pp. 557, 558.*

APPEAL.—*Joint Assignment in Motion for New Trial.*—*Instructions.* —A joint assignment, in a motion for a new trial, that the court erred in the giving or the refusal to give a series of instructions will not be considered on appeal, where appellant's attorney has failed to present in his brief an argument against the ruling of the trial court as to each instruction in the series. *p. 559.*

TRIAL.—*Failure of Jury to Answer Interrogatories.*—In the trial of an action against a city for the death of a person employed to assist in the work preparatory to the laying of water-mains, which death was caused by the caving in of the walls of a trench dug by other workmen, the following interrogatory, among others, was propounded to the jury: "If you answer that there was any secret, hidden, latent, or unexposed danger upon or along the line of said trench, state fully and clearly what it was." *Held,* that upon the failure of the jury to return an answer to the interrogatory, it was not error for the court to refuse to require such answer, since the interrogatory was too general in its nature. *p. 560.*

SAME.—*Opinion Evidence.*—*Notice.*—In the trial of an action against a city for the death of an employe, caused by the caving in of a water-main trench, another person employed on the work at the same time was permitted to answer a question calling for a conversation had with the city superintendent, in which conversation witness

had refused to do the work afterwards assigned to the deceased, for the reason that "it was not safe." *Held*, that the question was not objectionable as calling for an opinion of the witness, since it was adapted to show notice to the city. *p. 560.*

From the Allen Superior Court. *Affirmed.*

*J. M. Barrett, S. L. Morris* and *W. H. Shambaugh,* for appellant.

*T. R. Marshall, W. F. McNagny, P. H. Clugston* and *G. F. Felts,* for appellee.

BLACK, J.—The appellee, as administrator of the estate of Patrick Sheehy, deceased, brought his action against the appellant to recover for the death of his intestate. Three paragraphs of complaint were held sufficient on demurrer. In the first paragraph, it was in substance alleged (omitting introductory matter), that on and before the 24th of May, 1897, the appellant owned and operated a system of water-works in the city of Fort Wayne, used to supply the citizens with water, in consideration of compensation paid by them, by way of a specific tax known as water rent; that in order to extend said system, the appellant, on the day above mentioned was engaged in extending a water main along one of the streets of said city and in excavating a trench in said street wherein to lay a pipe in which to conduct water for delivery to additional consumers, and had a large force of men employed in the prosecution of such work as common laborers, one of whom was appellee's intestate; that he, so employed, assisting in said work was ordered and directed, with others, by the appellant through its proper officer, the inspector of water-works, who was the superintendent of said work, having, under authority conferred by the appellant, full charge and control thereof and of the workmen employed thereat, to proceed from a place where he was, where the ground was compact and hard, and where the banks were firm, to another point in said trench, and to dig certain holes in the bottom thereof, called and known as bell-holes; that said latter point was one where

said trench had been caused by the appellant to be excavated, in common with the rest of said trench, to a depth of six feet and six inches, and to a width of two feet, and the appellant, by its said inspector and superintendent, had caused the earth taken therefrom to be carelessly and negligently thrown out and deposited and piled up to the height of about five feet upon one of the banks of the trench, near the edge thereof, without said bank being shored or braced or in any way made secure against falling in, and where the upper stratum of the material of said street, of a thickness of about two feet, was composed of a body of closely compressed and compact soil mixed largely with gravel; that at said point, unlike the part of the ditch where the intestate had been at work previously, the middle and lower portions of the banks were composed of earth of a loose and unadhesive character, of such a nature as to render the piling thereon of the earth taken from the trench liable to cause the bank whereon it was so piled to cave in and endanger the lives of persons in the ditch opposite thereto; that, as appellant well knew, all the material of the banks of the ditch at this point was filling, or made earth, placed there but a short time before for the purpose of raising the roadway above high water, that of all this the intestate had no knowledge or notice; that he, in obedience to said order, did go along in said trench to the point where said bell-holes were so ordered to be dug, the digging of which required great care and attention in order to comply with measurements accurately made, and said work had to be performed in the bottom of said trench, where no knowledge could be gained of the danger resulting from the negligence of the appellant in so loading said bank with earth under the conditions that then and there existed; and so, without knowing and appreciating the conditions thereat and the danger likely to result therefrom, the intestate entered that portion of the trench, and, relying on the care of the appellant, under whose direction said portion as well as all other portions

of the trench had been constructed, and without knowing the danger, he at once proceeded to do the work so assigned him; that while he was so engaged and but a few moments after he had entered that portion of the trench, without any fault on his part, and because of the negligence and carelessness of the appellant acting through its said officer in so carelessly and negligently piling the material taken from the trench on the bank thereof without said banks being shored, braced, or otherwise secured against falling in, "the bank on which said pile of earth was so placed, in consequence of the great weight of the material so piled upon it and the loose and incohesive character of the material or filling in the middle and lower portions of the sides of said bank, caused the same to give way and cave in, together with the mass of earth piled on said bank and the heavy crust of combined gravel and other material, composing that part of said ground near the surface, and, without any fault or negligence on his part, to fall upon and against" the intestate with such great force as to wound, bruise, and crush him in such a manner as to cause his death within a few hours thereafter; wherefore, etc.

The second paragraph of complaint was in most respects like the first, with somewhat greater particularity. It was alleged that the trench for the water-main was being excavated along St. Joe boulevard, commencing at its intersection with Lake avenue and extending northward for about 600 feet, the trench, constructed along the east side of the street, being divided into sections, each twelve feet long, one of which sections was assigned to each of the laborers; that at a point about 250 feet from the south end of the trench, it approached near the center of the street, there being at this place a curve in the trench to accommodate it to the course of the street, which was not straight and not of uniform width; that the southern portion of the trench for 250 feet was straight; that the intestate, as a common laborer assisting in the prosecution of the work, had been

employed by the appellant in digging and excavating one of the southern sections, where the earth was solid, compact, and cohesive and exceedingly hard; that this place was safe and secure and there was no danger of the caving of the banks or necessity for bracing or shoring the banks to prevent caving in; that said trench was being dug in common with the rest of the trench, to the depth of six feet and six inches and to the width of two feet; that the appellant, through its said inspector and superintendent, had ordered and directed its said laborers to pile up all the earth from the trench on its west bank and near the edge thereof; that said pile extended throughout the entire length of the trench and in some places it was about five feet high, and as close to the edge of the trench as it could be placed; that the intestate was about five feet and six inches in height, and was an inexperienced man at the work at which he was engaged; that after he had completed the excavation of the section so assigned to him, he was ordered by the appellant to proceed along the bottom of the trench in a northerly direction from the place where he had thus been at work, to another point therein, and there to perform certain specific service other than the excavating which he had been engaged in doing, namely, to dig certain holes in the bottom of the trench called and known as bell-holes; that the point to which he was thus directed to go, and to which he did go, was 250 feet from the southern end of the trench, and was a place where the appellant had caused the trench to be excavated, in common with the rest of the trench, to the depth of six feet and six inches and to a width of two feet, and there was at this point a curve in the trench, the convex side of which was in the west bank, and the appellant had caused the earth taken from the trench at this point to be negligently and carelessly thrown out and deposited and piled up to the height of about five feet upon the west bank and as near the edge of the trench as it could be placed, all of which was done without said bank's being

shored or braced or in any way made secure against falling in. There were averments like those in the first paragraph relating to the character of the materials of the banks at this point and the knowledge of the appellant and the want of knowledge of the intestate; also, that this portion of the trench had been so excavated by other and different persons, and the intestate was without previous knowledge of the condition thereat, of the banks and of the earth piled thereon, and by reason of his stature and of the way in which he had proceeded thereto, did not know, and by the exercise of ordinary care, prudence, and diligence could not have known of the nature and character of the loose and unadhesive soil at this point, and of the nature and character of the banks thereat; that relying on the care of the appellant, and without knowledge of the danger, the intestate proceeded to a point about three feet north of the south end of said curve in said trench, and there undertook the work so assigned to him, etc.

In the third paragraph of complaint, besides averments much like those in the first, it was stated that, notwithstanding the dangerous condition of the banks at the curve of the trench, the appellant, so acting through its said inspector and superintendent, whose duty it was to inspect and examine said work, in order that the appellant might know the condition of said work and thus provide for the safety of its said laborers, failed to inspect the character of the material of said banks at said point and to ascertain and determine the probable effect of the piling of the earth taken from the trench on said bank as aforesaid. It was also alleged that the appellant suffered and allowed the intestate to incur the peril resulting from the dangerous character and condition of said bank by going, as he did, and had occasion in the course of said special employment to do, along, and being in, said trench at said point, without warning or informing him of the dangerous character thereof, he having at the time no previous knowledge or information of the character

and condition of the bank at said latter point; nor was such danger so manifest as to be observed and appreciated by a person exercising ordinary or reasonable care, situated as the intestate was; that almost immediately after his arrival at said point, by reason of such carelessness and negligence of the appellant in carelessly and negligently .failing to inspect, etc., and in suffering and allowing him to proceed, etc., without warning or informing him of the danger, and in prosecuting said work without said bank's being shored, etc., and in so carelessly and negligently causing the material taken from the trench to be piled up as aforesaid, the bank, in consequence of, etc., fell, etc.

It is suggested against the complaint by the appellant that neither paragraph charges the appellant with any duty toward the decedent; that his work was that of an independent contractor, and therefore the rule as to a master's duty to furnish a safe place in which to work has no application in this case. We can not agree with this view of the pleading. It seems quite clear that the complaint in each paragraph showed the existence of the relation of servant and master between the decedent and the municipal corporation acting through its proper officer, who had charge and control of the work as the representative of the city and assigned the tasks to the common laborers. It does not appear in any paragraph that the decedent was employed solely to dig the section to which he was at first assigned, or solely to dig a section or sections of the trench, and that he was taken from the safer work for which he had been employed and directed to perform other more hazardous work for which he had not been employed, though counsel in argument would, seem to think that the second paragraph was framed upon such a theory. On the contrary, each paragraph seems to proceed upon the theory that the decedent was employed by the appellant as a common laborer to assist as such in the work of laying an additional water-main, and in the course of his employment was assigned tasks

of different character, but all within the scope of his original employment.   Yet when the trench had been excavated to the intended depth, and that branch of the work had been completed for the appellant by a number of workmen engaged upon different sections, the decedent having performed his part of this work by digging a section where the earth was compact and hard and the sides of the trench did not need shoring or bracing and gave no indication of danger, he was sent by the appellant and placed at work upon another necessary and special kind of work, the making of bell-holes in the bottom of the trench at a distance from the safe place where he had been working.   The decedent did not make the place in which he was at work in constructing bell-holes.   There the trench had been excavated for the city by other workmen, and as to the decedent that place for work had been made by the city, and he was assigned to it by the city as a place wherein to do a specific kind of work, for the safe performance of which there was needed a trench not liable to cave in while the special work was being done therein with reasonable care, skill, and diligence.   There was no essential connection between the work of the decedent in digging his section at the southern end of the trench and his making bell-holes near its central portion.   It was substantially the same thing in effect as if not having done any other work in connection with the laying of the main, he had been employed to make bell-holes in a trench wholly prepared for that stage of the work by the city through its other workmen.   There is, it would seem, the same distinction between such a case and one where the danger is caused by the servant himself in the course of his work whose risks he has assumed, as, for instance, where there is a caving in of a trench which he is making, as exists between the latter case and one of injury of a servant from the caving in of a negligently prepared trench wherein he is at work laying or calking pipes or repairing machinery.

In *Kranz* v. *Long Island, etc., R. Co.,* 123 N. Y. 1, 25 N.

E. 953, the plaintiff's intestate was ordered to clean or aid in cleaning water-pipes placed under ground. A trench was opened for that purpose by a section man and laborers some hours earlier, which was a necessary step to furnish a suitable place and proper opportunity for the performance of the intestate's duty. While he was in the trench engaged in disconnecting the pipes, the earth caved in upon him and he died from suffocation. The court said: "Those who opened the trench were performing the master's duty to the deceased in preparing a suitable place and opportunity for the labor of the intestate in discharge of his duty. * * * When the master·ordered the intestate to perform his work. as a machinist in the trenches opened and prepared for him, he had a right to assume that the place had been made reasonably safe by the master through other and competent servants employed by him. * * * Whether the trench was opened with reasonable care, whether any danger was obvious to the deceased, whether greater precaution should have been exercised against the falling of the bank, whether the agents employed were skilful or inexperienced, and so, whether on all the facts the defendant was negligent, are questions of fact to be solved by the jury." See, also, *Breen* v. *Field,* 157 Mass. 277, 31 N. E. 1075, a case of injury from the falling in of the sides of a trench to one employed to lay pipe therein; *McKee* v. *Tourtellotte,* 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542, an action for injuries suffered in consequence of the caving in of a ditch bank while the plaintiff was at work connecting water-pipes in the ditch. We do not discuss the complaint further than is needed to meet the objections to it urged by the appellant, which are without plausible support.

There was an answer in denial, and a jury returned a general verdict for the appellee with answers to interrogatories. The appellant's motion for judgment in its favor on the answers to interrogatories was overruled. Much of the argument of counsel in. discussing this ruling is sufficiently

disposed of in what we have already said.   There was no
material conflict between the general verdict and the special
findings in answer to interrogatories.   The facts that the de-
cedent was experienced "to some extent" in digging and
working in trenches of water-works, and that he had dug
bell-holes in such trenches in 1896 and 1897, and that by the
exercise of his senses of sight and feeling he could have told
what kind of soil constituted the banks of the trench where
he was injured, are not, singly or together, in irreconcilable
conflict with the general verdict, in support of which we
must indulge the presumption that it was fully supported
by the evidence upon every question in issue, except so far
as the contrary is established by the special findings.

The court overruled the appellant's motion for a new
trial.   In discussing the question as to the sufficiency of the
evidence, counsel for the appellant contend that the danger
was so manifest that the decedent was chargeable with con-
tributory negligence.   The intestate, pursuant to the order
of the city's officer in charge of the work, went from the
place where he was first engaged near the south end of the
trench to the place where the fatal injury befell him, by
walking along the bottom of the trench, the banks of which
were higher than his head.   At the place where the bank
caved in upon him and others, there was a curve, and the
superintendent of the work had caused the earth taken from
the excavation here to be piled upon the convex bank very
near to the trench to avoid the obstruction of the street.
Whatever might be concluded as to the ability and oppor-
tunity of the decedent to observe the greater looseness of the
lower strata of the bank at this point, it appears that he did
not have opportunity to know fully the danger arising from
this heavy load of earth upon the convex bank.   Though
the work of making bell-holes was within the general scope
of the decedent's employment, he had a right to assume, in
the absence of warning or notice, when he went to the per-
formance of the specific work which he was ordered to do,

that the city through its representative had not made the place where he was thus to work unsafe through its negligence. *Taylor* v. *Evansville, etc., R. Co.,* 121 Ind. 124, 6 L. R. A. 584.

It is well settled that the master and the servant do not stand upon an equality of duty to inspect the place where the servant is to work and to detect dangerous defects therein. The servant is not bound to search the place for latent and hidden defects or perils, but is only required to observe such obvious defects and perils as the exercise of reasonable care, skill, and diligence on his part, according to the circumstances, will enable him to know or discover. The employer's ignorance of a condition which renders unsafe the place occupied by his employe in the service assigned to him constitutes no defense for the employer in an action against him for injury to the employe occasioned by such unsafe condition, when by the exercise of due care and inspection the employer could have discovered and remedied the defects or prevented the incurring of the danger therefrom. It is the duty of the employer to keep himself informed of the condition of such a place; and therefore notice of such condition to the employer will. be presumed after the lapse of a sufficient time; and where the place in which work is to be performed has been prepared by the employer himself or by the employer through some of his employes, and thereafter another employe is sent into such place to do such work, the employer must be treated as chargeable with such knowledge of its condition as he might have gained by such proper inspection as the employer had opportunity to make, having regard to the use to which the place is to be put by the employe thus sent into it.

It was for the jury, taking into consideration, under the instructions of the court, all the circumstances shown by the evidence, to determine whether or not there was a failure on the part of the decedent to exercise reasonable care for his own safety; and we see no ground upon which we would be

authorized to interfere with the conclusion announced on this subject by the jury in their general verdict.

In the motion for a new trial the appellant assigned as the fourth cause the giving to the jury upon the plaintiff's motion twelve instructions, indicating them by their numbers; and as the fifth cause, the giving by the court upon its own motion instructions numbered from one to twelve inclusive, and as the sixth cause the court's refusal to give to the jury as requested by the defendant nine instructions, indicating them by their numbers. The fourth and fifth assignments of causes each concluded with the words, "to the giving of which and each of which the defendant then and there excepted;" and the sixth assignment concluded with the words, "to the refusal to give which and each of which the defendant then and there excepted."

Though the appellant excepted to the giving of each of the instructions given and to the refusal of each of those refused, these causes for a new trial did not present for consideration the giving or the refusal of any instruction separately. The fourth cause could not be available unless all the instructions designated in it were erroneous. The same is true as to the fifth cause; and the sixth cause could not be available unless it was error to refuse any one of the instructions designated in it. The appellant has presented argument against only three of the instructions embraced in the fourth cause, and against only three of those embraced in the fifth cause, and in favor of only four of those embraced in the sixth cause. Not being called upon to examine any of these instructions not discussed by counsel, we can not indulge any presumption against the action of the court in relation to the instructions not discussed, and we can not consider the argument of counsel upon those discussed. *Hoover* v. *Weesner*, 147 Ind. 510; *Stewart* v. *Long*, 16 Ind. App. 164; *Storrs, etc., Co.* v. *Fusselman*, 23 Ind. App. 293; *Pape* v. *Hartwig*, 23 Ind. App. 333; *Harrod* v. *State, ex rel.*, 24 Ind. App. 159.

The jury returned answers to all the interrogatories submitted to them, except one numbered thirty-eight, as follows: "If you answer that there was any secret, hidden, latent, or unexposed danger upon or along the line of said trench, state fully and clearly what it was." No answer having been returned to this interrogatory, the appellant, thereupon, and before the discharge of the jury, moved the court to require an answer thereto. This the court declined to do. The jury was not requested in any interrogatory, as this one seems to presuppose, to state whether or not there was any such danger, and had not stated that such danger existed. Whatever bearing upon the case the existence or non-existence of such a danger at the place where the decedent was fatally injured could properly have, there could be no error in refusing to require an answer to so general an interrogatory, if it could be said to be strictly relevant to any answer returned by the jury.

A witness who dug one of the sections, testifying on behalf of the appellee, having testified that he had a conversation that day with Mr. Iten, the appellant's superintendent of the work, about digging bell-holes, was asked for the appellee what this conversation was, what was said. The appellant's objection to this question having been overruled, the witness answered, "He wanted me to dig bell-holes, and I would not do it. I said it was not safe." It is contended, in effect, that the question was objectionable as calling for an opinion of the witness. The question did not call for opinion evidence by its form. It was adapted to show what knowledge or notice the superintendent had concerning the matter of digging the holes, and the answer was relevant for such purpose. We can not find reversible error in permitting the propounding of the question.

Matters relating to the examination of other witnesses, the same in substance as that last disposed of above, are adverted to by counsel, but they need no further notice.

Judgment affirmed.