## MELLETTE *v.* INDIANAPOLIS NORTHERN TRACTION COMPANY ET AL.

[No. 6,187. Filed December 8, 1908. Rehearing denied June 8, 1909. Transfer denied December 14, 1909. Appeal to Supreme Court dismissed January 4, 1910.]

1.  TRIAL.—*General Verdict.—Effect.—Interrogatories.*—A general verdict is a finding for the successful party upon all the issues, but an answer to an interrogatory to the jury controls such verdict so far as such answer affects the verdict. p. 93.
2.  MASTER AND SERVANT.—*Unsafe Place.—Obvious Defects.—Use of Faculties.*—A servant is required to use his faculties to discern and avoid obvious defects and dangers. p. 94.
3.  MASTER AND SERVANT.—*Defects.—Reliance upon Performance of Duty.*—A servant is conclusively presumed to know of obvious, but not latent defects; and the master is required to ascertain

and remove latent defects, the servant having a right to rely upon the master's superior knowledge as to such defects. p. 94.

4. MASTER AND SERVANT.—*Obvious Dangers.*—*Ice and Sleet.*—*Railroads.*—*Trestles.*—A servant is conclusively presumed to know that a wet railroad trestle will be covered with ice and will be slippery when the temperature is at zero. p. 94.

5. MASTER AND SERVANT.—*Latent Defects.*—*Rain.*—*Ice.*—*Snow.*—A servant who knows of a rain immediately followed by zero weather and a snow, is conclusively presumed to know that there will be ice under the snow, causing exposed objects to be slippery. p. 95.

6. MASTER AND SERVANT.—*Assumption of Risk.*—*Known Defects.*— A railroad construction foreman who goes upon a trestle knowing it to be covered with ice assumes the risk of slipping therefrom, although he slips in less than a minute after going upon such trestle. p. 95.

7. MASTER AND SERVANT.—*Negligence.*—*Specific Orders.*—A master who gives to his servant a specific order, leaving to the servant no discretion, is liable for resultant injuries, unless the danger is so glaring that an ordinarily prudent person would not incur it. p. 96.

8. MASTER AND SERVANT.—*Specific Orders.*—*Complaint.*—A complaint alleging that "defendants ordered and directed that plaintiff and his crew proceed in the work of constructing such bridge and trestle," does not show an order so specific as to make the defendants liable to a servant who fell from the trestle which was covered with ice. p. 97.

9. MASTER AND SERVANT.—*Specific Orders.*—*Interrogatories.*—Answers to one interrogatory, showing that defendants ordered the plaintiff to proceed to the top of an ice-covered trestle and put the stringers in position; to another, that defendant's order was as follows: "There are no new orders, the old orders still stand. Go ahead and push the work on the trestle on the island," and to others, that defendants, upon a request from plaintiff as to his work, ordered: "No, you keep on at that work. I want you to get it done as quickly as possible. I want you to hurry it up. Keep working at the trestle on the island. Push the work," do not show such a specific order as renders the master liable, where the servant, in obedience, went upon an ice-covered trestle and was injured thereby. pp. 97, 98.

10. MASTER AND SERVANT.—*Interrogatories.*—*Evidentiary Facts.*— An answer to an interrogatory, in an action by a servant against his masters, setting out verbatim the order given to the servant, states a fact, and not an evidentiary fact. p. 98.

11. MASTER AND SERVANT.—*Obvious Dangers.*—*Warning.*—A master is not required to warn his servant against obvious dangers. p. 98.

From Cass Circuit Court; *John S. Lairy*, Judge.

Action by Peter Mellette against the Indianapolis Northern Traction Company and others. From a judgment for defendants, notwithstanding a general verdict for the plaintiff for $8,000, plaintiff appeals. *Affirmed.*

*M. Winfield* and *George A. Gamble*, for appellant.

*J. A. Van Osdol, Myers & Yarlott, McConnell, Jenkines, Jenkines & Stuart*, for appellees.

HADLEY, J.—Appellant sued appellees for injuries received while engaged in work as their employe. Trial was had and a general verdict returned for appellant, together with answers to interrogatories. Upon motion, judgment was rendered for appellees upon the answers to interrogatories, notwithstanding the general verdict. The only question we shall consider is this ruling of the court below.

The complaint is in two paragraphs, each of which states that appellant was employed as a bridge foreman in the construction of bridges for appellees; that, at the time of the injuries complained of, appellant, with a crew of men, was constructing a bridge, the trestle work of which was about thirty feet high; that on January 14, 1904, while said bridge and trestle were in process of construction, the weather became very cold, and much rain had fallen the day before, on account of which the ground in the vicinity of the trestle became frozen, and the timber and tools used in the construction thereof became covered with ice, causing the premises and all of the timbers, tools and appliances used in the construction of said bridge to be and remain in a slippery condition, rendering it difficult to be upon and about said bridge and trestle, and to handle the timbers and put them in position, causing such tools and appliances to be difficult to handle, altogether causing it to be hazardous to work upon said bridge and trestle and to place the heavy timbers and other materials in proper position, which unsafe and hazardous condition was unknown to appellant and could not be

seen by him, as said slippery condition was hidden from view and concealed by a heavy fall of snow; that the attention of appellees was called to said unsafe condition, and that it was hazardous, on that account, for appellant and the crew working with him in said construction to work in and about the construction of said bridge and trestle at that time; that appellees ordered that appellant and his crew proceed in the work of constructing said bridge and trestle; that said order was careless and negligent, in that, as aforesaid, it was dangerous to appellant and others working with him to be in and about said bridge, using the tools and appliances, and placing the heavy timbers in position; that while working in obedience to said order on said January 14, and while in the line of his duty, standing upon said bridge and upon a timber that was being moved by one of the men working with him, said timber, by reason of the slippery condition, slipped and fell and precipitated him to the ground thirty feet below, whereby he was injured; that said coemployes were working upon said bridge under the instructions of said appellees; that said order and instructions were negligent and careless, in that appellees should have ordered and instructed the men to suspend work until the ice and said slippery condition had been removed; that said acts of said coemployes were in obedience to said instructions and not otherwise, and by reason of said acts appellant was thrown off the bridge and injured; that said injuries were received on account of the acts of said coemployes while thus engaged in constructing said bridge, acting in strict obedience to the orders of said appellees.

The amended third paragraph contains substantially the same averments, except that it does not aver that appellant had no knowledge of the icy and slippery condition, but it avers that said icy and slippery condition was hidden from view by the snow, and also that appellant obeyed said order and instructions of the appellees without knowing and appreciating the dangers and hazards in prosecuting the work

92 ·     APPELLATE COURT OF INDIANA.

Mellette *v.* Indianapolis, etc., Traction Co.—45 Ind. App. 88.

under the conditions that existed at that time, and that the order recited in the first paragraph was a careless and negligent order.

The answers to the interrogatories show that appellant had been in the employ of appellees as foreman of a crew of bridge carpenters, engaged in the construction of bridges, continuously since June, 1903; that he had charge of the construction of the trestle where the injury was sustained, the men under him, the manner of doing the work and the method of handling the timber in constructing the bridge; that prior to January 14, 1904, the date of the injury, said employes working with appellant and under his direction hoisted and stacked on top of said trestle lumber and stringers; that at the time said lumber and stringers were so hoisted they were covered with ice; that there was a slight rainfall, followed with sleet, snow and severe cold on the afternoon and night of January 13, 1904; that appellant, with other members of his crew, was working in the locality of said trestle on January 13, and each of them, on said January 13, knew of said rainfall, sleet and snow; that said sleet and snow covered the timbers, stringers and trestle, and rendered them icy and slippery; that said icy and slippery condition of said trestle and timbers rendered it dangerous for men to work thereon on the morning of January 14; that the icy, slippery and dangerous condition of the trestle and timbers was produced solely by a change in weather conditions which prevailed on the afternoon and night of January 13; that on the morning of January 14 the thermometer indicated zero weather; that on said morning two of the employes, before going to work on the trestle, notified appellant that it was dangerous to work thereon; that the workmen, under the orders of the appellant, swept the snow off the trestle before attempting to put the stringers in position; that appellant a short time before his injury went up on top of the trestle; that when he reached the top of the trestle the men were engaged in shifting a stringer into position;

that said stringer at the time was covered with ice; that appellant upon reaching the top of the trestle took his position on the stringer that was being shifted into position, and his injury was caused by the slipping and falling of said stringer; that the icy and slippery condition of the trestle and timbers thereon was open and obvious, and anyone possessing good eyesight, and standing on the top of said trestle, could readily observe this condition on the morning of appellant's said injury, after the snow was removed; that appellant and appellees had equal opportunity of knowing the icy and slippery condition of the timbers and trestle, and appellant had as much information as appellees had touching the condition of said timbers and trestle on said morning, and full opportunity of knowing of such condition on said morning, and the liability of said timbers to slip and fall; that Hugh Bronson, appellees' timekeeper and supplyman, delivered to appellant on the morning of January 14 an order as follows:

"There are no new orders. The old order still stands. Go ahead and push the work on the trestle on the island."

That said Hugh Bronson had been in the habit, prior to said January 14, of bringing out from the headquarters of the appellees the orders as to what the appellant and the men under him should do on each day; that prior to this time appellant had never constructed a trestle in midwinter; that the laying of stringers on said trestle on said morning was attended with extraordinary hazard; that appellant had not been upon the trestle on the morning of January 14 before the time he was injured, and had been upon the trestle less than a minute when he received the injury.

The rules governing the force and effect of the answers to interrogatories, when interposed as a nullification of the general verdict, are so well established, and the authorities so numerous and well known, that it would be unprofitable to recite them here. By the general ver-

94 APPELLATE COURT OF INDIANA,

Mellette *r.* Indianapolis, etc., Traction Co.—45 Ind. App. 88.

dict in this case every material, well-pleaded fact of the complaint was found to be true. But if the answer to an interrogatory contradicts an averment of the complaint, such answer must be taken as the correct expression of the jury.

The basis of appellant's action is that the dangerous condition of the place of work was a latent or hidden one, and appellees, by a special, negligent order, directed appellant into the danger. It is shown by the complaint and answers to the interrogatories that the injury was caused by the icy and slippery condition of the timbers and tools; that this dangerous condition was occasioned by the inclement weather, and not by any act of omission or commission of appellees; that appellant knew of the rain, sleet, snow and the low temperature, and knew that when the timbers were hoisted to the top of the trestle they were covered with ice. The master is not required to be the eyes and ears of the servant, but the servant must use the senses with which he is endowed by nature (*Day* v. *Cleveland, etc., R. Co.* [1894], 137 Ind. 206; *Griffin* v. *Ohio etc., R. Co.* [1890], 124 Ind. 326, and cases cited), and must take cognizance of the laws of nature (*Fay* v. *Chicago, etc., R. Co.* [1898], 72 Minn. 192, 75 N. W. 15; *Louisville, etc., R. Co.* v. *Kemper* [1897], 147 Ind. 561).

It is the employe's duty to observe what is obvious and may be readily seen or known. He is not required to inspect or search for hidden defects or dangers. That is the master's duty, and he has the right to rely upon the master's performance. He has also the right to rely upon the master's superior knowledge as to these matters. *M. Rumely Co.* v. *Myer* (1907), 40 Ind. App. 460.

But in the case before us it was as well known to the appellant as to the appellees that rain and sleet followed by zero temperature would cover timber, tools and appliances, as well as everything else exposed to it, with ice, and that such materials when so covered were liable to slip and slide when handled. These are the results

of the laws of nature known to everyone of ordinary intelligence. As to these matters, the master could have no knowledge superior to appellant's, and the latter had no right to rely upon it. If the ice was thereafter covered with snow, it could not be said to be hidden or latent to one who had knowledge of the sequence of the weather conditions and changes. But, aside from this, the jury found that the icy, slippery and dangerous condition of the timbers on the trestle was open and obvious; that one possessing good eyesight could readily observe this condition when the snow was removed. The snow was removed when he stepped upon the trestle. The ice was under him, around and about him everywhere. He could not look for a footing without seeing ice. It required no peering inspection or search to reveal it. The most casual glance would discover it as fully and completely as an hour's examination. At that moment, he had all of the knowledge of the conditions that the master could have had, and with this knowledge he proceeded with the work. The general rule is that where, as here, the conditions are not complex and the circumstances such as to be easily comprehended, an employe, who knows the facts, conditions and circumstances, is bound and conclusively presumed to know the dangers arising therefrom, and if, after such knowledge, he continues in such work, he is held to have assumed the risks thereby incurred, and if he is thereby injured the master is not liable. *M. Rumely Co.* v. *Myer, supra; Kane* v. *St. Louis, etc., R. Co.* (1905), 112 Mo. App. 650, 87 S. W. 571; *Shea* v. *Kansas City, etc., R. Co.* (1898), 76 Mo. App. 29; *Murphy* v. *Grand Trunk R. Co.* (1904), 73 N. H. 18, 58 Atl. 835; *English* v. *Chicago, etc., R. Co.* (1885), 24 Fed. 906; *Shaver* v. *Home Tel. Co.* (1905), 36 Ind. App. 233, 114 Am. St. 373; *Jenney Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566; *Louisville, etc., R. Co.* v. *Sandford* (1889), 117 Ind. 265; *Louisville, etc., R. Co.* v. *Kemper, supra; Fay* v. *Chicago, etc., R. Co., supra.* It is

not the case of a servant compelled to act in an emergency. There was nothing to prevent him from exercising calm, deliberate judgment. He was the foreman in full charge of the men and the work. His orders were to go ahead with the work on the island; the particular place and manner and method of the work were left to him.

It is urged, that, since he suffered the injury in less than a minute after he reached the top of the trestle, he had no time to observe conditions and determine what to do. As we have seen, it took no time to observe conditions, and that he took no time to deliberate upon his course of action was no fault of appellees'. As a limitation to the general rule before mentioned, it is the law that where the 7. master commands the servant to go into a dangerous place and perform a dangerous task, or use a defective tool, at a particular time in a particular way, leaving the latter no discretion as to the time or manner of his performance, the servant may rely upon the command of the master at the master's risk, and not be put to the alternative of either quitting the employment or incurring danger at his own risk, unless the danger is so glaring and extreme as to be apparent to anyone, and one that a prudent man would not incur. *English* v. *Chicago, etc., R. Co., supra.*

In the case of *Jenney Electric, etc., Co.* v. *Murphy, supra,* the court say: "Where an employer commands his employe, whom he assumes to direct, to use a defective implement in a particular way, leaving the latter no discretion as to the time or manner of its use, the employe may rely upon the superior knowledge and experience of the employer, unless the defect is so glaring and extreme as to make the danger of using the utensil apparent to any one. On the other hand, when an employe has within his own control the manner of using an obviously defective tool, and the means of securing safety, if he chooses to employ them, if he neglects the means of security to himself he elects to take the risk. In such a case, it cannot in reason be said that the

NOVEMBER TERM, 1909. 97

Mellette r. Indianapolis, etc., Traction Co.—45 Ind. App. 88.

employe has acted upon the confidence reposed in the employer, and that he is, therefore, entitled to remuneration.''

It is insisted by the appellant that his case comes within the rule of special direction. But his complaint does not support this theory. The averment of the complaint upon this point is ''that defendants ordered and directed that plaintiff and his crew proceed in the work of constructing said bridge and trestle.'' This order is of the broadest general character. There is no attempt, by other averments, to show that this order, either by its terms or by implication, was a specific direction to appellant on that morning to go upon the trestle and place the stringers in position. It was not a direction to go upon the trestle at all. It could as well have been construed as a direction to accumulate and prepare the timbers upon the ground or do any other work that might be done with safety. But it is urged that the jury, by its answers to interrogatories, found that the order on that morning was a specific direction to go upon the trestle and place the stringers in position. Three interrogatories were submitted to the jury as to what the order was that was given to appellant on the morning of the injury. Two of them asked if the order, in substance, was that plaintiff and the men under him should proceed that morning to the top of the trestle and put the stringers in position? To which the jury answered ''Yes.'' The other asked the jury to set out the order in full, which the jury did as follows: ''There are no new orders. The old order still stands. Go ahead and push the work on the trestle on the island.'' Other interrogatories showed that some two or three days before the accident, Horace D. Hanford had said to appellant, in reply to appellant's request for orders as to other work: ''No, you keep on at that work. I want you to get it done as quickly as possible. I want you to hurry it up. Keep working at the trestle on the island. Push the work.''

It is urged against the interrogatory that sets out the order, that it is the finding of an evidentiary fact. We do not so construe it. The fact that a certain order was given was averred, and whether such an order was given was a fact to be found. And setting out the order *in totidem verbis*, where the language is clear and unambiguous, is surely as much a finding of fact as to set out the substance or its import, which involves a conclusion. The order, therefore, as averred and found by the jury, was not an order to do a specific thing at a specified time and in a specified manner. It was a general order to perform a general work in a manner to be chosen by the appellant. It did not preclude him from exercising his own discretion. The character of the work and the manner and method of doing it were left to him, and when he went upon the trestle, and, with full knowledge of the conditions, directed the moving of the stringers, and took his position on the stringer that was being moved, knowing it was covered with ice, he assumed all the risks attendant upon the kind of work and the manner and method of doing it.

It is also suggested that appellees were negligent in not warning appellant of the danger and ordering him to cease work. As we have already seen, the danger was open and obvious. The master is not required to warn the servant of a danger that is open and obvious to the senses and can be appreciated and understood by any one of ordinary intelligence. *Foster* v. *Bemis Indianapolis Bag Co.* (1904), 163 Ind. 351; *Atlas Engine Works* v. *Randall* (1885), 100 Ind. 293, 50 Am. Rep. 798; *Whitcomb* v. *Standard Oil Co.* (1899), 153 Ind. 513; 1 Labatt, Master and Serv., §238.

For the foregoing reasons the judgment is affirmed.

Watson, Rabb, Roby and Comstock, JJ., concur.

Myers, J., did not participate.