## RILEY v. NEPTUNE ET AL.

[No. 22,499. Filed December 9, 1913. Rehearing denied February 26, 1914.]

1. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk.* —Persons of ordinary intelligence are deemed to have knowledge that some danger from falling and sliding earth, sand and gravel in obedience to natural laws is a usual accompaniment of taking sand and gravel from a pit or bank, and, since the risk of injury from such causes is an ordinary risk incident to the employment, persons so engaged are held to have assumed the risk. pp. 233, 234.

Riley *v.* Neptune—181 Ind. 228.

2. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Presumptions.*—In the absence of anything in a complaint for injuries sustained in removing gravel from a pit to show that plaintiff was not a man of ordinary intelligence, it will be presumed that he was. p. 234.

3. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk. —Presumption as to Knowledge.*—An employer has a right to assume that an adult employe possesses that knowledge which is acquired by common experience and that he understands those dangers which are the subject of common knowledge, or which can be readily seen by common observation. p. 234.

4. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk. —Obvious Dangers.—Appreciation.*—Where an injury to a servant results from a danger that is of common knowledge, it will be deemed that he assumed the risk, unless it appears that by reason of his immaturity of years, inexperience, or other disability, he was incapable of appreciating the danger. p. 235.

5. MASTER AND SERVANT.—*Injury to Servant.—Safe Place of Work. —Assumption of Risk.*—The rule that a master must use ordinary care to furnish his servant a safe place of work does not require him to provide against the ordinary risks incident to the performance of the service, where the work is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety, since the hazards arising from such change of conditions are regarded as ordinary dangers of the employment, and are necessarily assumed by the servant. p. 235.

6. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk. —Removal of Gravel from Pit.—Sliding Earth.*—Where a complaint to recover for injuries sustained while removing gravel from a pit, alleged that during the winter the face of the pit had fallen in so that it was at an angle of about forty-five degrees, that during the summer some gravel had been taken out at each end, leaving the bank there almost perpendicular, but at an angle of about forty-five degrees at the middle, that on being directed to remove gravel therefrom plaintiff objected that it was dangerous and liable to fall, that defendant assured him he could remove the gravel from the center thereof with safety, that in fact the gravel at that point was loose and dangerous and liable to rush out at the bottom of the pit wherever the earth covering was removed, which fact plaintiff in the exercise of ordinary care could not know, but that it could have been known to defendant, and that when plaintiff had partly loaded his wagon the gravel rushed down and struck the wagon and crushed plaintiff, there could be no recovery, since it appears that the danger came and the injury followed from the change made by plaintiff in his

working place, and that the hazard was ordinarily incidental to the work in hand, the risk of which he assumed.   pp. 235, 238.

7. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Allegations of Nonassumption of Risk.—Sufficiency.*—In an action for injuries sustained while removing gravel from a pit, allegations of the complaint that there was no apparent danger to plaintiff at the particular point where he was working when the injury occurred, and that he did not know and could not have discovered by reasonable care that the gravel at that point was of a character rendering it likely to rush out upon him, and that defendant did know or by the exercise of reasonable care could have known it, and that plaintiff relied upon the assurance by defendant that there was no danger, are insufficient to overcome the imputation from all the facts alleged that plaintiff, being chargeable with the well-known laws of nature which cause unsupported sand and gravel to fall and slide, was bound to know that the removal of the supporting foot of the face of the bank, which had previously fallen and slipped, would perhaps cause a renewal of the downward and outward movement. p. 236.

8. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk. —Jury Question.*—Where the knowledge and means of knowledge of an employe are, under normal circumstances, inferior to that of the employer, the employe may rely upon the employer's assurance of safety, and, if he does so, he is not deemed, as a matter of law, to have assumed the risk, nor is he chargeable with contributory negligence, in the event of an injury from any danger within the scope of such assurance, but such questions are questions of fact for the jury. p. 237.

9. MASTER AND SERVANT.—*Knowledge of Danger.—Reliance on Assurance of Safety.*—The rule that an employe may rely upon his employer's assurance that a situation is not dangerous does not apply where the employe is an adult of ordinary intelligence and has knowledge of the danger equal to that of his employer, but its application is justified only where a superiority of experience, skill or knowledge on the part of the employer actually exists or may be fairly imputed.   p. 238.

From Boone Circuit Court; *Willett H. Parr*, Judge.

Action by John Riley against George Neptune and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Affirmed.*

*Samuel M. Ralston* and *Ira M. Sharp*, for appellant.
*T. J. Terhune*, for appellees.

Cox, J.—Appellant sued appellees to recover damages for personal injuries sustained by him while engaged in the work, for appellees, of taking gravel from a pit owned by them. Appellees jointly and severally demurred to the complaint for want of facts to state a cause of action, and these demurrers were sustained. This action of the lower court is the basis of the one assignment of error in this court and it involves only the question whether appellant assumed the risk of injury which attached to the work under the circumstances averred in the complaint.

The complaint is very long but in material substance it alleges that on October 6, 1909, appellant was and, for more than twenty-five years prior thereto had been in the employ of appellees, doing work on their farm lands; that on such lands there was on the date named, and had theretofore been for a number of years, a gravel pit or bank from which gravel was hauled by means of teams of horses drawing wagons; that this gravel bank was about 100 feet long and about twenty feet high from the bottom which was the water level of a near-by creek; that of this elevation, the gravel extended from the bottom for about 15 feet and was covered by a layer of earth about five feet thick which formed the surface; that the pit or bank was so situated that gravel hauled therefrom had to be taken from the bottom of this elevation; that during the winter or spring preceding October 6, 1909, the face of the gravel bank had fallen from the top downward so that it was at an angle of about forty-five degrees from perpendicular; that during the spring and summer of 1909, sand and gravel had been taken from the bank for about forty feet from each end to such an extent that where so taken, the face of the bank at those points was nearly perpendicular, but that about twenty feet of the bank near the middle was left at an angle of forty-five degrees; that on October 5, 1909, while the gravel bank was in this condition, one of the appellees acting for himself and the others, ordered and directed appellant to haul gravel

from the pit or bank and place it on the barn yard on the farm; that appellant objected and told appellee who had given the order that the bank was dangerous; that it was in fact dangerous at the places where the face was perpendicular, and liable to fall at any time; that near the center where it still stood at an angle of forty-five degrees, the gravel could not be obtained without first removing the dirt and earth; that there was no apparent danger in doing this; that when appellant objected to taking gravel from the bank on account of the danger, appellee, who had given him the order, informed appellant that the gravel could be taken from that part which stood at an angle of forty-five degrees, without danger; that the appellee designated had examined the bank and went to it with appellant and showed him how, by first removing the dirt and earth from the foot of the incline, he could safely remove the gravel; that in fact the sand and gravel in the bank at that point was of a loose and dangerous character and was liable to rush out from the bottom of the incline whenever the earth was removed but that such fact was not apparent and was unknown to appellant, and could not have been known to him by the exercise of reasonable care; that appellees did know such fact or could have known it by the exercise of reasonable care; that appellant believed that part of the bank was safe and on October 6, 1909, in obedience to the direction so given him, he went with a team of horses and wagon to get and haul the gravel, relying upon the assurances of safety given by said appellee; that he stopped his team and wagon four or five feet from the foot of the incline near the middle of the bank which was on the south side of his wagon, while on the north side and about three feet from his wagon was a bank of earth two or three feet high; that when he had partly loaded the wagon he took hold of the north hind wheel for the purpose of lifting to assist in starting the wagon, whereupon the sand and gravel rushed out from the bottom of the bank and struck the wagon thereby forcing it to the

north and crushing appellant between it and the low bank of earth on the north, greatly injuring him. The nature of these injuries and elements of damages are then averred. It is further averred that appellant's injuries were caused wholly by the negligence of appellees in this, that they negligently ordered appellant to haul gravel from said part of the bank without inspecting and examining the place to ascertain the character of the sand and gravel therein and whether it would or was liable to rush outwardly from the bottom; that they negligently assured appellant that the place designated was a safe place in which he might work; that appellees could have ascertained the character of the sand and gravel and could have ascertained that there was great danger of it moving outwardly, by inspecting it by inserting iron rods into the bank at the place where appellant was directed to work. The complaint closes with a demand for $15,000.

It is manifest from the allegations of the complaint that the removal of the materials from the foot of the incline at the place where appellant was working, left the face of the incline without the lateral support which held it in place, and caused the sand and gravel to slide down and outward and from this came appellant's injuries. The sand and gravel moved from the operation of natural laws of

1. which persons of ordinary intelligence must be deemed to have knowledge. That some danger from falling and sliding earth, sand and gravel in obedience to such laws is a usual accompaniment of taking sand and gravel from a pit or bank is a matter of wide and general knowledge. Such work is necessarily hazardous and the risk of injury from such causes is an ordinary risk incident to the employment. That the employe in such cases impliedly contracts with the employer not to demand compensation for injuries so received but assumes the risk himself is a rule which has long been settled and generally applied. *Griffin* v. *Ohio, etc., R. Co.* (1890), 124 Ind. 327, 24 N. E.

888; *Vincennes Water Supply Co.* v. *White* (1890), 124 Ind. 376, 24 N. E. 747; *Swanson* v. *City of Lafayette* (1893), 134 Ind. 625, 33 N. E. 1033; *Railsback* v. *Wayne County Turnpike Co.* (1894), 10 Ind. App. 623, 38 N. E. 221; *Welch* v. *Carlucci Stone Co.* (1906), 215 Pa. St. 34, 64 Atl. 392, 7 Ann. Cas. 299, note in which cases are collected; 1 Thornton, Negligence §§608, 646; 1 Shearman & Redfield, Negligence (6th ed.) §207d *et seq.;* 4 Thompson, Negligence §4822; 3 Labatt, Master and Servant (2d ed.) §§1167 *et seq.,* 1172, 1177; 4 Labatt, Master and Servant §1313 note aa; 2 Bailey, Personal Injuries (2d ed.) §372. There is nothing in the complaint before us to indicate that appellant was not a man of ordinary intelligence and it is to be presumed that he was. In his many years of service in general farm work, he would necessarily gain by experience some knowledge of the properties of earthly matter and the natural laws governing it. "The law supposes every adult to possess such ordinary intelligence, judgment, and discretion as will enable him to appreciate any obvious danger. The master therefore has a right to assume that an adult employe possesses 'that knowledge which is acquired by common experience;' that he knows everything which is 'a matter of common knowledge or presumed to be within the common experience of all men of common education;' that he understands 'those dangers which are the subject of common knowledge, or which can be readily seen by common observation.' All servants, therefore, are presumed to be acquainted to some extent with the properties of matter and the operation of the laws to which it is subject. To this generic conception are referable the decisions which proceed upon the hypothesis that a servant is, in some degree at least, bound to take notice of the dangers arising from the action of gravitation under various circumstances." 4 Labatt, Master and Servant (2d ed.) §1313. In such case it is said that the inability to maintain the action is a peremptory

conclusion of law, if it is apparent that the injury 4. resulted from a risk of this description, unless it is shown by the plaintiff that by reason of his immaturity of years, experience, or other disability, he was incapable of appreciating the danger and therefore, that he was not chargeable with that comprehension of the risk which otherwise he would be presumed to have possessed. And from the standpoint of the master's duty of ordinary care 5. to provide a safe place, it is the rule in such case that he is under no obligation to provide against the ordinary risks incident to the performance of the contract of service. "The rule that it is the duty of the master to exercise ordinary care to provide a reasonably safe place of work for his servants is held not to be applicable to cases in which the very work which the servants are employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them." 3 Labatt, Master and Servant (2d ed.) §1177 and cases cited in note 1, p. 3140.

The facts averred in the complaint before us make a case baldly within the rule. The danger came and the injury of appellant followed from the change which he made 6. in his working place. The danger did not arise until he had removed the materials at the foot of the incline which held those above in place. Changed conditions in productive industry, which have immeasurably increased the ordinary hazards which it presents to those engaged in many of its branches, have caused a trend of the law away from the harsh doctrine of the assumption of ordinary risks by the employe. Almost wholly the change has been brought about by legislative enactment. The spirit of the time has been, however, appreciated by courts and they have, in cases justifying it, declared the law, so far as might be and give

some regard to the rule of *stare decisis,* in harmony with the time. But the complaint before us involves no change in the assumption of risk by legislative fiat, and no changed conditions which would warrant this court in making any modification of the long settled and widely recognized rule. The liability of gravel and sand in a pit or bank to slide and fall in the process of removal is the same as when the rule was first declared and the method of taking gravel from the bank, which is disclosed in the complaint before us, is as simple and primitive as then.

It is earnestly contended by counsel for appellant, however, that his complaint contains allegations which take his case out of this general rule. The allegations which, it is claimed, show that appellant did not assume the risk are that there was no apparent danger to appellant in working at the particular point where it is alleged he was injured by the moving sand and gravel; that appellant did not know and could not have discovered by reasonable care that the sand and gravel at that point was of a character which rendered it liable to rush out upon him and that appellees did know, or by the exercise of reasonable care could have known it; that appellees assured appellant, after he had objected to working in the pit or bank on account of the danger, that there was no danger at the particular point and directed him to work there and that he relied on such assurance. The general allegations which purport to negative knowledge of the danger on the part of appellant cannot overcome the imputation which the facts averred carry; that appellant, being chargeable with a knowledge of well-known laws of nature which cause unsupported sand and gravel to fall and slide, was bound to know that the removal of the supporting foot of the face of the gravel bank which had fallen and slipped down until it stood at an angle of forty-five degrees, would perhaps cause a renewal of the downward and outward movement. Common experience and common knowledge teach that this is

the usual thing that occurs under such conditions, just as it is alleged it did occur. Clearly appellant's opportunity to know that this danger would follow the removal of the gravel was equal to that of appellees. The danger in the work was not a latent one for which appellant would have been under no obligation to search, but one likely to arise at any time when appellant began his work of removing the gravel. *Griffin* v. *Ohio, etc., R. Co., supra; Swanson* v. *City of Lafayette, supra; Railsback* v. *Wayne County Turnpike Co., supra.*

Many decided cases have established an exception to the general rule that the employe accepts the ordinary risks of his employment where the employe directs attention 8. to or complains of a defect or danger in the place where he is required to work, or in the tools, appliances or machinery with which he is required to work and thereupon the employer, or representative assures him that he can proceed without danger, and requests him to proceed with his work which the employe, relying upon such assurance, does. In the cases to which this exception is applicable, it is well settled that the employe, by relying upon the actual or imputed superior knowledge of the employer and going forward with his work, does not as a matter of law, assume the risk or become chargeable with contributory negligence. In such cases, these questions become questions of fact for the jury. 4 Thompson, Negligence §4664; 2 Bailey, Personal Injuries (2d ed.) §416; 3 Labatt, Master and Servant (2d ed.) §1199; 4 Labatt, Master and Servant (2d ed.) §1373. The theory upon which this exception rests is that, as the knowledge and means of knowledge possessed by the employe are, under normal circumstances, inferior to that of the employer the former is, as a general rule, justified in relying upon an express statement made by the employer in respect to the danger of the work. Where this disparity of information appears, an assurance of safety from the employer, like a specific order, may be

regarded as having the effect of lulling the employe into a feeling of security and giving him good reason to believe that the danger did not exist; and so believing, therefore not assuming it. 4 Labatt, Master and Servant (2d ed.) §1374. But to authorize the application of this exception to the general rule, it must appear that the employe relied and acted upon the assurance. It must be the operating influence, and it must have justification in actual or fairly imputed superiority of experience, skill or knowledge on the part of the employer. The exception does not arise when the employe is an adult of ordinary intelligence and has knowledge of the danger equal to that of his employer. In that case, his reliance upon an assurance of the absence of danger has no justification. 2 Bailey, Personal Injuries (2d ed.) §416. *Mellette* v. *Indianapolis, etc., Traction Co.* (1910), 45 Ind. App. 88, 86 N. E. 432, and cases there cited.

Cases are numerous in which a sudden or a specific order given by the employer or a representative in carrying on his work, or threats of discharge are held influential on the question of the employe's assumption of risk, but it is not claimed that either of these elements is involved in this case. The theory evidently is that appellant was given a general order to get and place the gravel. He was not, apparently, under the compulsion of a fear of discharge. It does not appear but that this work was involved in his general work on appellees' farms. He was directed to do a work where he was not under the immediate supervision of his employer, but where his own work constantly changed the conditions of the place where it was done. The face of the gravel bank had fallen to an incline and the conditions were as obvious to him as to his employer. The knowledge of danger from a further shifting of the sand and gravel when the support of the foot of the incline was removed was imputable to him, as well as to appellees, and in such case the latter's assurance to him of the absence

of danger was not available to evade the assumption of risk from it.

The leading case of *Haas* v. *Balch* (1893), 12 U. S. App. 534, 6 C. C. A. 201, 56 Fed. 984, is frequently cited in support of the rule that the employer's assurance of safety relieves the employe of the assumption of risk or changes the question from one of law to one of fact. It is relied on by appellant here. In that case, the work was under the immediate supervision and direction of a representative of the employer and it appeared that he had superior knowledge of the conditions and based his assurance of the absence of danger upon it. For this reason it was held that the question was for the jury. The court, however, recognized the rule applicable to the case before us and said: ''If, in a given instance, the servant, being of mature age, and of ordinary intelligence, has equal knowledge with the master of the dangers to be apprehended, and he voluntarily subjects himself thereto, knowing of their existence, the mere fact that he had received an assurance that there was no risk to be dreaded or avoided might be of little avail.''

The case of *City of Fort Wayne* v. *Christie* (1901), 156 Ind. 172, 59 N. E. 385, which counsel for appellant also cites, involved the excavating of a deep trench in the streets of appellant city under the direction of its skilled employes. The opinion of the court holding the complaint good in that case is manifestly based on superiority of knowledge imputed to the city in such a work and a distinction is there drawn between the facts of that case and the cases of *Swanson* v. *City of Lafayette, supra; Railsback* v. *Wayne County Turnpike Co., supra;* and *Griffin* v. *Ohio, etc., R. Co., supra.* In that case also, the duty of shoring up the sides of the trench as an exercise of ordinary care is recognized as it has been in many other cases where a trench is being dug, a thing manifestly impracticable under the conditions of the case before us. A similar case is *City of Fort Wayne* v. *Patterson* (1900), 25 Ind. App. 547, 58 N. E. 747.

Counsel also rely on the case of *Standard Forgings Co.* v. *Saffel* (1911), 176 Ind. 417, 96 N. E. 321. The complaint in that case, which involved an excavation for a foundation, alleged that the injured servant was of less than ordinary intelligence and experience, and that by reason of his inexperience and lack of intelligence he was incapable of comprehending the danger. On this ground this court refused to disturb the finding, saying: "While the danger was sufficiently obvious to charge a person of ordinary intelligence with knowledge thereof, the complaint alleges and the evidence shows that appellee was not a person of ordinary intelligence, and while that fact would not absolve him from the duty of exercising such intelligence as he possessed, in apprehending danger, the question as to whether he should, under the facts disclosed, be charged with constructive knowledge of his peril, was one of fact for the determination of the jury."

The court did not err in sustaining the demurrer and the judgment is affirmed.

NOTE.—Reported in 103 N. E. 406. See, also, under (1) 26 Cyc. 1187; (2) 26 Cyc. 1414; (3) 26 Cyc. 1172; (4) 26 Cyc. 1213; (5) 26 Cyc. 1101, 1113; (6) 26 Cyc. 1397; (8) 26 Cyc. 1478; (9) 26 Cyc. 1185, 1213, 1217. As to risks assumed by servants, see 52 Am. Rep. 737. As to the assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. As to servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. On the question of assumption of risk of changing conditions, see 19 L. R. A. (N. S.) 340; 28 L. R. A. (N. S.) 1267. For the effect of the master's assurance as to obvious dangers of employment, see 4 L. R. A. (N. S.) 971. On the effect of assurance of safety by master or coservant generally, see 48 L. R. A. 542, 23 L. R. A. (N. S.) 1014; 30 L. R. A. (N. S.) 453. As to the liability of a master for injuries to a servant caused by the sliding of rock, earth, etc., in a trench, quarry or other excavation, see 21 Ann. Cas. 708.