THE ISLAND COAL COMPANY *v.* GREENWOOD.

[No. 18,316. Filed April 21, 1898. Rehearing denied Nov. 23, 1898.]

MASTER AND SERVANT.—*Personal Injury.—Knowledge of Danger.— Mines and Mining.—Inspection.*—Plaintiff was employed by defendant in mining coal, his business [being to operate a cutting machine, and on the day of the accident was engaged in cutting away a part of a vein of coal in a room preparatory to blasting, and was injured by top coal and slate falling upon him 'from the roof of the room where he was at work. The mine boss inspected the room two days before the accident and found top coal adhering to the roof of the room, which he ordered taken down. He again visited the room on the morning of the accident and saw that a part of the top coal had not been removed. Plaintiff and his assistant, both experienced miners, brought the cutting machine in the room,

and, noticing that the top coal had not been taken down, they sounded same, and, finding it firm, began to cut the side of the room, and after they had been at work an hour and a half the top coal fell, injuring plaintiff. *Held*, that plaintiff had an opportunity equal with that of defendant in ascertaining the danger, and that he could not recover for such injury.

From the Sullivan Circuit Court.   *Reversed.*

*John S. Bays* and *Miller & Elam*, for appellant.

*Davis & Moffitt* and *Cullop & Kessinger*, for appellee.

HOWARD, C. J.—Appellee was employed by the appellant company in mining coal, and has brought this action to recover damages for injuries alleged to have been caused by the negligence of the company in suffering coal to fall upon him from the roof of the mine in which he was at work. The jury returned a general verdict in favor of appellee, assessing his damages at $4,500. They also returned answers to interrogatories. The questions discussed by counsel may best be considered in connection with the action of the court in refusing to give judgment to appellant on these answers to interrogatories, notwithstanding the general verdict. From the answers to interrogatories it appears: That on the 16th day of October, 1895, and previous thereto, the appellant company was engaged in mining coal near Linton, in Greene county; that on said day, and for more than a year before, appellee was employed in the company's mine known as No. 2, his business being to run a cutting machine, in which work he was assisted by one Sherwood; that there were a number of openings in the mine called work rooms, each connected with a passage way, or entry, the rooms being from twenty to twenty-six feet in width; that after a room was started at a given width it was usual for the miners to work at the face of the vein,

that is, at the end of the room farthest from the entry; that the vein of coal being mined on said 16th of October, 1895, was about five feet in thickness; that it was mined by the men operating the machine by cutting away a part of the lower edge of the vein across the whole face of the room, preparatory to blasting; that after the machine men had done their work, other miners, called loaders, drilled holes in the face of the coal which had been so cut under, into which holes blasting powder was inserted, and thereby masses of coal were thrown down and broken up; that while the loaders were blasting coal in one room and removing it from the mine, the machine men were at work in another room; three loaders, in this case, following the two machine men; that it was the business of the loaders to clear up a room after a blast and before any further cutting was done in it; that appellee was hurt in a room known as No. 8 in the ninth entry east of the south main entry, his injury being caused by top coal and slate falling upon him from the roof of the room; that on the 16th day of October, 1895, the day on which appellee was hurt, and for several days prior thereto, one Newport was appellant's mine boss; that said mine boss visited room eight on the 14th day of October, 1895, and then found top coal adhering to the roof of said room, extending across the end of the room next to the face of the coal, and being about eleven feet wide on the right hand side of the room, and three and a half inches thick; that the mine boss sounded this top coal and found it loose at the point where he sounded it; that the mine boss then directed one of the loaders to take down the top coal, and before the accident occurred the loaders did take down a part thereof; that the part taken down began at the left side of the room, and the loaders took down all that was

The Island Coal Company *v.* Greenwood.

loose; that the mine boss again visited the room on the morning of October 16th, the day of the accident to appellee, and then saw that a part of the top coal had not been taken down; that about three-quarters of an hour after the mine boss left room eight, on the morning in question, appellee and his assistant brought in their cutting machine, and both noticed that a part of the top coal had not been taken down; that appellee then sounded said top coal by striking it with a pick to discover whether it was loose and likely to fall down, but upon such sounding the coal appeared to be firm, and to adhere closely to the roof of the room; that appellee's assistant, Sherwood, sounded the top coal in like manner with the handle of a shovel, and also found it firm and adhering tightly to the roof; that thereupon appellee and his assistant placed their machine and began to cut the side of the room under said top coal, and after they had been at work for an hour and a half the top coal fell upon them; that the weight of the coal that came down was about 800 pounds, being all of the coal that adhered to the roof when they began cutting, and it fell a distance of two feet and a half; that miners determine whether top coal, or other material adhering to the roof of a room, is likely to fall by striking it and listening to the sound; if such material is loose it will give forth a hollow sound on being so struck; no other method is shown for determining whether top coal is loose; that there is always more or less danger of top coal falling from the roof of a mine, and no one can determine by examination when it will fall; that appellee and his assistant, while running a cutting machine in appellant's mine, had eight different working rooms, and changed from one to another, going to a room which the loaders had made ready; that rooms were often shot, cleaned up by the

loaders, and again entered by the machine men be-
tween the regular visits of the mine boss; that ap-
pellee and his assistant, Sherwood, when they went
to work in a room often found top coal adhering to
the roof which the loaders had not taken down, and
it was their custom on those occasions to test the con-
dition of such top coal by sounding the same, and
thus determining whether it was safe to work under;
that on this occasion Sherwood sounded said coal all
over its surface, and the coal sounded solid and safe,
both when appellee sounded it and when it was
sounded by Sherwood; that the pick used by appellee
was the best thing for sounding top coal, and the
shovel handle used by Sherwood was a good imple-
ment for that purpose, either being better than the
implement used by the mine boss in sounding on the
14th of October, 1895; that to judge of the safety of
the top coal no one could do more than listen to the
sound when it was struck; that appellee and Sher-
wood had good hearing when they sounded the top
coal in room eight, and both heard the sound given
forth when it was struck by the pick and the shovel
handle; that the condition of room eight when appel-
lee and Sherwood entered it on the morning of the
accident was open to their observation, but they did
not observe its condition closely or sound the top coal
over its whole surface; that the reason why top coal
was often found adhering to the roofs of rooms in
which appellee and Sherwood worked was because
the entire vein did not always come down when the
blast was fired; that Newport, the mine boss, had
general charge of the safety of entries, rooms, and
other places where employes or others had occasion
to go in appellant's mine; that, in the course of the
work in mining coal, that part of the room where
work was actually done often became unsafe by

The Island Coal Company *v.* Greenwood.

reason of the manner in which such work was done, and the loaders often remedied the trouble which caused danger by removing the top coal; that such dangers often arose and were remedied between the visits of the mine boss, and without his suggestion; that appellee had been a coal miner, a part of the time, for eleven years before the accident, and Newport had then been mine boss for about ten days; that there was space in room eight to the north and west of where the top coal that fell on appellee was adhering to the roof, in which they might have worked their machine on the morning of the accident; but it was necessary for them to operate the machine under the overhanging coal; that the appellee placed his machine under the top coal, knowing that such top coal was there, in room eight, at the time he so placed his machine, and began work thereunder, because of the fact that he had sounded such top coal and believed it to be absolutely safe and free from danger.

It is not contended that these facts show contributory negligence on the part of appellee; but counsel for appellant do contend that the facts so found show that appellee assumed all risk of danger from the falling of the top coal. Counsel for appellee, on the other hand, contend that the danger was not obvious but concealed or latent, and that as to such danger there is no assumption of risk. It is true that the danger was concealed, but it was concealed from appellant as well as from appellee. And while the duty of inspection rested upon the company, and it was required to furnish a reasonably safe place for its employes to work, yet we think the facts show that the duty so resting upon appellant was performed as fully as was reasonably possible. It is to be remem-

bered that the defect in the roof was not in the pas-
sage way of the mine, but in the very place where
appellee was at work, and of which he had a fuller
and more complete knowledge than appellant could
have. The cause of danger was in the immediate pres-
ence of appellee, and had been thoroughly tested by
him and his assistant; and, on such test, the place was
found by them to be, as they believed, perfectly safe.
They often found such top coal adhering to the roof
when they entered a room to work, and were in the
habit of testing it, as they did on this occasion. The
jury found that there is always more or less danger of
such coal falling, and that no one can tell by any
examination when it will fall. It was also found
that such dangers often occur and the top coal is re-
moved between the visits of the mine boss, and with-
out his suggestion. No doubt, as to permanent open-
ings through which persons pass and repass in the
mine, it is the duty of the mine owner, made so by
the common law as well as the statute, to see that
the mine is safe from all dangers that may be avoided
by removing or propping up loose places in the roof.
And while the statute (section 12 of the act approved
March 2, 1891, Acts 1891, p. 57, section 7472, Burns'
R. S. 1894), makes it also the duty of the mining boss
to visit and examine every working place in the mine
at least every alternate day and see that the same
is properly secured by props or timber, and that
safety in all respects is assured, yet these require-
ments must be taken in a reasonable sense. It can-
not be intended that props shall be set up at the very
place where the machine men are at work. The men
must have room to use their machines and tools, and
to engage in the actual work before them. Indeed
the fact that the mine boss is not required to be pres-

ent oftener than every alternate day shows that these props are not to be set up before the workmen have cleared a place for them. It is found that rooms are often shot, cleaned up by the loaders, and again entered by the machine men between the regular visits of the mine boss.

In *Louisville, etc., R. W. Co.* v. *Howell*, 147 Ind. 266, an employe was injured by reason of the parting of a coupling pin between two cars. The employe was at the time standing on the front of the engine holding the shackle bar in his hands, and it was unsuccessfully sought to charge him with having assumed the risk of the danger occasioned by the defective coupling pin. "Had he coupled the cars between which the link was used," said the court in that case, "and thus handled the defective appliance and so had opportunity to observe it, there might be some propriety in holding him accountable for a knowledge of its condition. Employes are rightly held chargeable with knowledge of the condition of the tools and parts of machinery and appliances which they use or with which they come in contact." The same is true of the places in which employes are at work and with which they are in immediate contact. The condition and dangers of such places are liable to change from hour to hour, as the work progresses, and the employe himself has much better means of knowing of such condition and dangers than his employer possibly can have. An important consideration in such cases, as said by the supreme court of Iowa, in *Corson* v. *Coal Hill Co.*, 101 Ia. 224, 70 N. W. 185, is whether the structure, appliance or instrumentality is one which has been furnished for the work in which the employes are to be engaged, or whether the furnishing and preparation of it is itself

part of the work which they are employed to perform. So in *Finalyson* v. *Utica Mining Co.*, 67 Fed. 507, where an employe was injured by material falling from the roof of a mine, it was held that the rule as to providing a safe place to work did not fully apply to a case where the work consisted in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progressed. The case of falling top coal in such a case as the one before us is not unlike the caving in of a gravel pit, where it has been frequently held by this court that the employe assumes the risk of such a possible danger which is alike open to the observation of employer and employe. *Vincennes Water Supply Co.* v. *White*, 124 Ind. 376; *Swanson* v. *City of Lafayette*, 134 Ind. 625.

The jury here find that both appellant and appellee knew that a part of the top coal was left adhering to the roof of the place where appellee began work. Appellee found the coal, as he and his assistant believed, to be so fast to the roof as "to be absolutely safe and free from danger." In this it turned out that they were mistaken, whether the defect then existed or was brought about by causes arising after appellee and his assistant had begun their work. Having equal or better opportunities than appellant for knowing the danger threatening him, it would seem that appellee could have no right of action. Were it not for the provisions of the statute above cited, and the failure of the jury to find whether the overhanging coal could be propped or timbered without undue interference with the work, the case would hardly admit of doubt. We are of opinion, however, from a consideration of the whole case as presented, that justice will best be promoted by granting a new trial, rather than by ordering judgment on the an-

swers to interrogatories.  Judgment reversed, with instructions to grant a new trial, and with leave to amend pleadings if desired.