## J. WOOLEY COAL COMPANY v. TEVAULT.

[No. 22,962. Filed February 21, 1918.]

1. MASTER AND SERVANT. — *Injuries to Servant.* — *Employers' Liability Act.*—The Employers' Liability Act (Acts 1911 p. 145, §§8020a-8020k Burns 1914) is constitutional in all its provisions. p. 177.

2. MASTER AND SERVANT. — *Injuries to Servant.* — *Employers' Liability Act.*—The Employers' Liability Act does not authorize a recovery for injuries to a servant without negligence of the master or of those for whose acts he is responsible, and such negligence still remains the essence of liability in actions under its provisions. p. 178.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Negligence of Fellow Servant.*—Section 1 of the Employers' Liability Act

(Acts 1911 p. 145, §8020a Burns 1914) abrogates the common-law rule of assumption of risk of injury through the negligence of a fellow servant; and the failure of a fellow servant to exercise reasonable care for the safety of a coworker is deemed to be a breach of duty on the part of the master. p. 178.

4. STATUTES.— *Construction.— Intent.—* The true object of all statutory interpretation is to ascertain the meaning and will of the lawmaking body, and it is not permissible under the pretense of interpretation to make a law, either by extension or restriction, which shall depart from the legislative intent. p. 182.

5. STATUTES.—*Construction.—Intended Scope.—* Every statute is to be construed with reference to its intended scope and to the purpose of the legislature in enacting it; and where language is used that is ambiguous or that admits of more than one meaning, it is to be taken in such sense as will conform to the scope, and carry out the purpose, of the act.  p. 182.

6. MASTER AND SERVANT.—*Assumed Risks.—Contributory Negligence.—Employers' Liability Act.—Construction.—* The defense of assumed risk is ordinarily regarded as predicated on the theory that the employe, as an element in his contract of employment, has agreed for a consideration to relieve his employer from liability for injuries from inherent or apparent hazards in the employment, while contributory negligence is based on the fact that the employe's manner of meeting such hazards was not consistent with reasonable care; and in order to avoid uncertainty in the practical application of these two rules to the question whether the employe's remaining at work in the presence of a known danger presents an issue of contributory negligence or one of assumed risk, the legislature by provisions in §§2, 3 of the Employers' Liability Act (Acts 1911 p. 145, §§8020b, 8020c Burns 1914), construed by the court as correlative, has treated the question from either angle and has clearly announced that no injured employe whose conduct is characterized by due care shall be denied a recovery under the act because of assumed risk where negligence of the employer, in any of the particulars enumerated therein, caused the risk and proximately contributed to the injury.  p. 183.

7. MASTER AND SERVANT.—*Contributory Negligence.—Assumption of Risk.—Employers' Liability Act.—* While the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) does not in any manner restrict the defense of contributory negligence in its proper sense, it does declare that the fact alone that the employe took chances in encountering any of the dangers mentioned in the act, whether his act in so doing

is *denominated* contributory negligence or assumption of risk,
shall not constitute a defense in an action to recover for re-
sulting injury if it further appears that he used due care for·
his own safety.   p. 184.

8.   MASTER AND SERVANT.—*Injuries to Servant.—Jury Question.*
—Under §7 of the Employers' Liability Act (Acts 1911 p. 145,
§8020g Burns 1914), which provides that all questions of as-
sumption of risk shall be questions of fact for the jury, the
question whether the conduct of the employe, in encountering a
hazard that the act declares he did not assume, was char-
acterized by due care still remains an issue of fact.   p. 184.

9.   STATUTES.—*Construction.—Interpretation.*—Statutes are to be
construed so that full force and effect shall be given to all
parts thereof and, where the specific language used comes in
conflict with the general, the effort in the first instance must
be to harmonize all the provisions by construing all parts of
the act together; and the intent of the legislature, as declared
in the general enacting parts, is superseded only where the
repugnancy of the special provisions to the general language
is plainly manifest.   p. 184.

10.  STATUTES.—*Construction.—Interpretation.*—It is a settled
rule of statutory interpretation that, if violence will not be
done to the language of the statute, the application of words
used in a particular enactment may be enlarged or restrained
in order to bring the operation of the law within the inten-
tion of the legislature.   p. 185.

11.  STATUTES.—*Employers' Liability Act.—Construction.*—Under
the rules governing the construction of statutes, the respective
provisions of §§2, 3 of the Employers' Liability Act (Acts 1911
p. 145, §§8020b, 8020c Burns 1914) are intended to be correlative
and reciprocal rather than exclusive, and are directed toward
the broad purpose of the act, which purpose is the abrogation
of the doctrine of assumed risks as a defense against negli-
gence in all actions which come within the scope of the act.
p. 185.

12.  STATUTES. — *Employers' Liability Act. — Construction. —
"Working Place."*—In view of the conflict between the common-
law doctrine that the employe assumes the risk of injury re-
sulting from changing conditions in the working place as a
hazard inherent to the employment and the provisions of the
Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.*
Burns 1914), which abrogate the defense that inherent and
apparent hazards contributed to the injury complained of in
all cases where such injury is a proximate result of the negli-
gence of the employer, the term "working place" as used in
§3 of the act is interpreted in its broad sense to include, in

all instances, the place of employment, since such interpretation gives effect to the act as a whole and is in accord with the evident purpose.  p. 186.

13.  MASTER AND SERVANT.—*Injuries to Servant.*—*Safe Place to Work.*—*Employers' Liability Act.*—Under the rules applicable to actions under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) an employer operating a coal mine is liable for the death of an employe who assisted in undercutting a vein of coal where the negligent failure of other employes to remove coal loosened from the vein rendered the place of work dangerous, the rules being that an employer is liable for the injury or death of an employe where the jury finds that the employer's negligence or that of his agents proximately contributed to such injury or death, and that the employe's conduct in the face of the hazard resulting from such negligence was characterized by due care; but the employer is not liable where the jury finds either that the employe's conduct under the circumstances was not characterized by due care, or that the danger or hazard that caused the injury or death was not known and could not have been known to the employer in time to have remedied the condition or that it was necessarily incident to the employment.  p. 188.

14.  APPEAL.—*Review.*—*Harmless Error.*—In an action under the Employers' Liability Act for the death of a coal miner killed by the fall of coal from a vein which he was assisting to undercut, where the jury was expressly instructed that there could be no recovery unless the employer was negligent, the jury's verdict for plaintiff necessarily determined the absence of the element of assumed risk, and the failure of the court to instruct on that issue was harmless error.  p. 189.

15.  APPEAL.—*Review.*—*Harmless Error.*—In an action under the Employers' Liability Act, an instruction purporting to state the issues presented by the complaint, but which omits the allegation that the master employed more than five men, though incomplete, does not present reversible error, where other instructions referred to the issue and the undisputed evidence shows that the master employed more than 100 men.  p. 189.

16.  TRIAL.—*Instructions.*—*Cure by Others.*—In an action under the Employers' Liability Act for the death of a servant, instructions authorizing recovery on proof of the allegations of the complaint were cured by other instructions which fully covered the defense of contributory negligence.  p. 190.

17.  MASTER AND SERVANT.—*Injuries to Servant.*—*Employers' Liability Act.*—The Employers' Liability Act applies to an employe who entered the master's employment before the passage

of the act, and such employe is entitled to sue under it for an injury received after its passage. p. 190.

18. APPEAL.—*Waiver of Error.*—Questions assigned as error which appellant fails to discuss or to support by citation of authorities are waived. p. 190.

From Spencer Circuit Court; *Ralph E. Roberts,* Judge.

Action by Fannie T. Yoakum, as administratrix of the estate of Fred Yoakum, against the J. Wooley Coal Company. From a judgment for the plaintiff, the defendant appeals. On the death of the plaintiff administratrix during the pendency of the appeal, Leander C. Tevault was substituted as administrator *de bonis non.* (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*Albert W. Funkhouser, Arthur W. Funkhouser* and *Arch Stevenson,* for appellant.

*M. R. Tweedy, U. W. Youngblood* and *Swan & Mason,* for appellee.

SPENCER, C. J.—This action was instituted by Fannie T. Yoakum, as administratrix of the estate of Fred Yoakum, her deceased husband, to recover damages for his death through alleged negligence on the part of appellant. During the pendency of this appeal from a judgment for plaintiff, Mrs. Yoakum has died and, on proper motion, Leander C. Tevault, administrator *de bonis non,* has been substituted as party appellee.

It appears from the record that, at the time he received the injuries which caused his death, Yoakum was in the employ of appellant as a helper to Keith Hayne, the operator of a machine used in appellant's coal mine for the purpose of cutting under the coal at the base of the working face of the vein. Yoakum's work required him to kneel near the face of the coal and to remove and shovel back the slack and coal cut away by the

machine. While he was in this position a mass of coal fell on him from the face of the vein and so crushed him as to cause his death.

The complaint on which the case was finally submitted to the jury is in two paragraphs, each of which charges that on the evening before the accident which resulted in Yoakum's injury and death two loaders in the employ of appellant, Broshears and Esterline, shot down the coal from the face of the vein after it had been cut under and, on the following morning, had loaded and removed the coal which had thus been shot down, preparatory to placing the face of the coal in condition again to be cut under by the machine operator and his helper. The first paragraph of complaint charges negligence on the part of said loaders in failing to pick down and remove large quantities of coal which, although cracked and loosened by the shots that had been fired, had not fallen, but had remained standing against and clinging to the face of the coal. It is further alleged that it was a part of the work of the loaders under their employment to pick down and remove all loose coal, to examine the face of the vein, and so to prepare the same as to leave it in a safe condition for the machine operator and his helper. This paragraph also alleges that the loaders knew of the cracked, loose and dangerous condition of the face of the coal at the time they left it to be cut under, and that decedent had no notice or knowledge of such condition.

The other paragraph of complaint contains in substance the same charges of negligence as are made in the first, and alleges further that Hayne was negligent in his operation of the machine used in cutting under the face of the coal. The charge thus made is that ordinary care required the machine operator, in cutting under the coal at the face of a vein, to leave uncut a portion of the coal, known as a "stub," to serve as a

brace or support for the coal above, but that in the present instance the operator negligently failed to leave such stub or support and the want thereof caused the cracked and loose coal to fall.

Each paragraph of the complaint is based on the Employers' Liability Act of 1911 (Acts 1911 p. 145, §§8020a-8020k Burns 1914), and the principal questions presented by the appeal, which arise out of certain instructions given and refused, require a consideration of §§2 and 3 of that act, particularly as to their effect on the doctrine of contributory negligence and assumption of risk in personal injury actions between master and servant.

Preliminary to our consideration of these issues, however, it is important to note that several provisions of the act in question have already been brought to the attention of this and the Appellate Court and their interpretation, in part, at least, judicially established. In order, therefore, more clearly to outline the inquiry in the present instance and for the purpose also of indicating the sense in which some of the statements made in earlier decisions are to be interpreted, we state briefly the substance of the decisions in the principal cases to which reference is made:   (1) The Employers' Liability Act of 1911 is constitutional in all its provisions. *Vandalia R. Co.* v. *Stillwell* (1913), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258; *Terre Haute, etc., R. Co.* v. *Weddle* (1915), 183 Ind. 305, 307, 108 N. E. 225; *Kingan & Co.* v. *Clements* (1915), 184 Ind. 213, 215, 110 N. E. 66; *Vivian Collieries Co.* v. *Cahall* (1915), 184 Ind. 473, 486, 110 N. E. 672; *Goshen Milling Co.* v. *Bailey* (1917), 186 Ind. 377, 114 N. E. 869.   (2) The statute does not purport to authorize a recovery for injuries sustained by a servant without negligence on the part of the master, or

those for whose acts he is responsible, and such

2. negligence still remains the essence of liability in all actions brought under its provisions. *Vandalia R. Co.* v. *Stillwell, supra,* 271; *Standard Steel Car Co.* v. *Martinecz* (1918), —— Ind. App. ——, 113 N. E. 244, 247, 114 N. E. 94; *S. W. Little Coal Co.* v. *O'Brien* (1916), 63 Ind. App. 504, 113 N. E. 465, 468, 114 N. E. 96; *New York, etc., R. Co.* v. *Allen* (1916), 62 Ind. App. 391, 113 N. E. 315. (3) Section 1 of the act, *supra,* abrogates the common-law rule of assumed risks in so far as it applies to the particular risk of injury

3. through the negligence of a fellow servant, and the failure of a fellow servant to exercise reasonable care for the safety of a coworker engaged in a common employment is now deemed to be a breach of duty on the part of the master, and is governed by the rules of law applicable thereto. *Vandalia R. Co.* v. *Stillwell, supra,* 273; *Chicago, etc., R. Co.* v. *Mitchell* (1915), 184 Ind. 383, 390, 110 N. E. 215; *Id.* (1915), 184 Ind. 588, 591, 110 N. E. 680.

The above propositions are so firmly established as to render unnecessary their discussion at length in this opinion, and they are to be taken as a basis to be recognized throughout our inquiry into the questions raised in the present appeal. In some of the decisions above cited, and in others of the decided cases, various provisions contained in §§2 and 3 of the liability act have also been considered, and the conclusions therein reached will be noted in our present consideration of those sections.

Section 2 of the act (§8020b Burns 1914, *supra*) contains four separate provisions, of which the first is a restatement, in substance, of the rule relative to the burden of proof on the issue of the injured employe's want of due care and diligence which previously existed under earlier legislative enactment. §362 Burns 1914,

Acts 1899 p. 58. *Vandalia R. Co.* v. *Stillwell, supra,* 273. The second provision is that: "No such employe who may have been injured or killed shall be held to have been guilty of negligence or contributory negligence by reason of the assumption of the risk thereof in any case where the violation by the employer or his, its or their agents or employes, of any ordinance or statute enacted, or of any rule, regulation or direction made by any public officer, bureau or commission, was the cause of the injury or death of such employe." This provision, however, finds a corollary in the first provision of §3 of the act, which is as follows: "That in any action brought against any employer under or by virtue of this act to recover damages for injuries or the death of, any of his, its or their employes, such employe shall not be held to have assumed the risks of the employment in any case where the violation of such employer or his, its or their agents or employes of any ordinance or statute enacted, or of any rule, direction or regulation made by any public officer or commission, contributed to the injury or death of such employe." §8020c Burns 1914, *supra.*

On comparison, it will be noted that the above correlative provisions are directed to the legal effect of substantially the same influence, and that their distinction rests largely in a transposition of terms. In the one, it is provided that the injured employe shall not be deemed guilty of *contributory negligence* by reason of his *assumption of the risk* of his employer's violation of a statute or ordinance, etc., while, in the other, he is relieved of all *assumption of risk* where such violation on the part of the master *contributed* to his injury. Since contributory negligence on the part of an employe presupposes negligence on the part of his employer, it is apparent that each provision, in its legal effect, announces the same rule, viz.: That, where an employer

fails to heed a legislative or administrative command to which he is bound to conform, he is negligent *per se,* and if his servant is injured as a result of such failure, however apparent, the latter's right to a recovery shall not be denied as a matter of law solely through a plea that he assumed the risk of injury or was negligent in continuing at his employment. Neither of these clauses, however, restricts the defense that the servant, under the circumstances in issue, failed to use due care for his own safety.

Passing now to the third provision of §2—viz. "In actions brought against any employer under the provisions of this act for the injury or death of any employe, it shall not be a defense that the dangers or hazards inherent or apparent in the employment in which such injured employe was engaged, contributed to such injury,"—we find again that §3 contains a corresponding provision, as follows: "In any action brought against any employer under the provisions of this act to recover damages for injuries to or the death of any of his, its or their employes, such employe shall not be held to have assumed the risk of any defect in the place of work furnished to such employe, or in the tool, implement or appliance furnished him by such employer, where such defect was, prior to such injury, known to such employer or by the exercise of ordinary care might have been known to him in time to have repaired the same or to have discontinued the use of such defective working place, tool, implement or appliance." It is true that the two provisions just quoted contain greater differences in phraseology than those which we have heretofore considered, but, for the moment, we shall treat those differences as superficial rather than vital and consider only the broad purpose of each provision. It is enough, now, to note generally that, under the above provision in §3, the only "dangers or hazards inherent

or apparent" into which the element of negligence on the part of an employer may enter, arise out of defects in "working place, tool, implement or appliance." Treating these phrases as synonymous in their practical interpretation, we are led at once to the conclusion that the legislative purpose was to reach the same result through the language of either provision. In the one instance, the legal defense that *apparent dangers* contributed to the injury is removed, while in the other, the employe is held not to assume the *risk of known defects* as a matter of law, but the substantial aims of the two provisions are identical. Similarly, we may compare, without quoting, the last provision of §2 and the corresponding clause in §3. Each, in its legal effect, declares that no employe, injured through his obedience or conformity to any order or direction of his employer, etc., shall be denied a recovery as a matter of law solely because he obeyed such order, even though it involved apparent danger.

The only remaining provision of the two sections under consideration is found in the last sentence of §3, and is as follows: "The burden of proving that such employer did not know of such defect, or that he was not chargeable with knowledge thereof in time to have repaired the same or to have discontinued the use of such working place, tool, implement or appliance, shall be on the defendant, but the same may be proved under the general denial." Here we find a marked change in the law as it existed prior to the passage of the act of 1911 (*Vandalia R. Co.* v. *Stillwell, supra,* 272), but the effect of this change is further to harmonize the two sections by extending, so as to cover all matters of defense, the rule which places on the employer the burden of proof on such issues.

With this analysis of the several provisions of §§2 and 3 in mind, we are prepared to inquire as to the leg-

islative intent that has thus found expression in
the enactment of a law which contains two com-
plete sections so similar in their import, and
which, in several particulars, is a restatement of
well-established doctrines, either of statutory or
common-law origin.    In pursuing this inquiry,
it must be remembered that the true object of all statu-
tory interpretation is to ascertain the meaning and will
of the lawmaking body, and that it is not permissible
under the pretense of interpretation to make a law,
either by extension or restriction, which shall depart
from the legislative intent.    Every statute is to be con-
strued with reference to its intended scope and to the
purpose of the legislature in enacting it; and where
language is used which is ambiguous or admits of more
than one meaning, it is to be taken in such a sense as
will conform to the scope of the act and carry out the
purpose of the statute. *State, ex rel.* v. *Bartholomew*
(1911), 176 Ind. 182, 191, 95 N. E. 417, Ann. Cas.
1914B 91; *Storms* v. *Stevens* (1885), 104 Ind. 46, 50, 3
N. E. 401; *Maxwell* v. *Collins* (1856), 8 Ind. 38, 40.

The principal object of the statute now under discus-
sion has received extended and careful consideration in
the case of *Standard Steel Car Co.* v. *Martinecz, supra,*
and we need here set out only the substance of the con-
clusions therein reached.    In general, it was clearly
the legislative intent greatly to restrict the defense of
assumed risks in personal injury actions between em-
ployer and employe in all industries to which the act is
applicable.    This intent is apparent in §1, which, as
heretofore noted, abrogates the fellow-servant rule, and
it is emphasized in §§2 and 3, *supra,* one of which ex-
pressly declares that no injured employe shall be held
guilty of contributory negligence solely by reason of
his assumption of certain risks of his employment, and
the other destroys the legal effect of some risks which

might otherwise be assumed. The similarity of these provisions suggests a purpose in their enactment in that form and their phraseology indicates an intent to affect, in some manner, the rule of contributory negligence as well as the doctrine of assumed risks. Theoretically, at least, the courts have long recognized a clear distinction between the two principles. As said in the Martinecz case, *supra* (113 N. E. 249): "The defense of assumed risk is ordinarily regarded as predicated upon the theory that the employe, as an element in his contract of employment, has agreed for a consideration to relieve his employer from liability for injuries, which the former may suffer by reason of inherent or apparent hazards in the employment; while contributory negligence, where it is effective as a defense, is based on the fact that the employe's manner of meeting such hazards was not consistent with reasonable care." In the practical application of the two rules, however, under a wide variety of circumstances, there has developed a confusion of terminology in judicial opinions and a lack of harmony in the decisions as to whether the fact that an employe remains at work in the presence of a known danger presents a question of assumed risk or of contributory negligence. The distinction was of little consequence so long as assumption of risk and contributory negligence led to the same result, but under a statute which should relieve the employe of assumed risks, without changing the rule of contributory negligence as judicially applied, the question becomes of vital importance. *Seaboard Air Line Ry.* v. *Horton* (1915), 239 U. S. 595, 601; *Standard Steel Car Co.* v. *Martinecz, supra.*

With an evident desire to avoid this uncertainty in the law, the legislature, in the act of 1911, has treated the situation from either angle in the correlative provisions of §§2 and 3, *supra,* and has clearly

announced that no injured employe whose own conduct at the time is characterized by due care 7. shall be denied a recovery under the statute because of assumed risk, if it.appears that negligence on the part of his employer, in any of the particulars enumerated therein, caused such risk and proximately contributed to his injury. In this connection, it should be borne in mind that the statute does not in any manner restrict the defense of contributory negligence in its proper sense. It does declare that the fact alone that the employe took chances in encountering any of the dangers therein enumerated, whether his act in so doing is *denominated* contributory negligence or assumption of risk, shall not constitute a defense in an action to recover for resulting injury if it further appears that he used due care for his own safety, and this is the sense in which the term "contributory negligence" is used in §2, *supra,* and in decisions which have construed the same. *Vivian Collieries Co.* v. *Cahall, supra; Doan* v. *E. C. Atkins & Co.* (1915), 184 Ind. 678, 111 N. E. 312; *American Car, etc., Co.* v. *Williams* (1916), 63 Ind. App. 1, 113 N. E. 252, 254; *Deer* v. *Suckow Co.* (1915), 60 Ind. App. 277, 280, 110 N. E. 700; *Benkowski* v. *Sanders, etc., Co.* (1915), 60 Ind. App. 374, 377, 109 N. E. 924. Thus the question as to whether the conduct of the employe, while encountering a hazard which the statute says he did not 8. assume, was characterized by due care still remains an issue, which is to be determined in each instance as a question of fact. §8020g Burns 1914, *supra; Standard Steel Car Co.* v. *Martinecz, supra S. W. Coal Co.* v. *O'Brien, supra.*

Our inquiry thus far has proceeded on the assumption that the phrase "dangers or hazards inherent or apparent," as used in §2, and the reference to defects in "working place, tool, implement or ap- 9.

pliance," in §3, *supra,* are synonymous in their practical interpretation. To this assumption, the objection is urged that the particular provisions of the latter section, following, as they do, the broad language of §2, *supra,* are intended to limit its more general provisions. If we are to sustain this objection, it will practically eliminate that part of §2 which abrogates the "defense that the dangers or hazards inherent or apparent in the employment" contributed to the injury. It must be remembered, however, that: "Statutes are to be construed so that full force and effect shall be given to all parts thereof, and this rule must be applied to ascertain wherein language which is specific, necessarily comes in conflict with other language which is general. The effort must, in the first instance, be to harmonize all the provisions of the statute by construing all parts together, and it is only when on such construction the repugnancy of special provisions to the general language is plainly manifest that the intent of the legislature, as declared in the general enacting parts of the statute, is superseded." *State* v. *Shanks* (1912), 178 Ind. 330, 335, 99 N. E. 481, 482. Furthermore, it is a settled rule of statutory interpretation that the application of words used in a particular enactment may be enlarged as well as restrained in order to bring the operation of the law within the intention of the legislature, when violence will not be done to the language of the statute by such interpretation. *Storms* v. *Stevens, supra,* 50; *Maxwell* v. *Collins, supra,* 40.

We have already determined two primary facts: (1) That the respective provisions of §§2 and 3 are intended to be correlative and reciprocal rather than exclusive, and (2) that each is directed toward the broad purpose of the statute, which finds expression in §1 as well, viz., the abrogation of the doctrine

of assumed risks as a defense against negligence in all actions which come within its scope. With these facts as a premise we are led naturally to the conclusion that particular terms are to be construed in harmony with the general provisions of this act, and that the legislative intent was to authorize no implied exceptions in the application of its express decree. This conclusion is of importance in the present case in view of an instruction given to the jury which treated the place of decedent's injury as his "working place" within the meaning of the statute. It is true that at common law the rule which requires a master to exercise ordinary care to provide for his servants a reasonably safe place in which to work is held not to be applicable to cases in which the very work which the servants are employed to do is of such a nature that its progress results in a constant change in conditions affecting their safety. *Riley* v. *Neptune* (1913), 181 Ind. 228, 235, 103 N. E. 406; *Swanson* v. *City of Lafayette* (1893), 134 Ind. 625, 627, 33 N. E. 1033; *Jennings* v. *Ingle* (1904), 35 Ind. App. 153, 157, 73 N. E. 945.

At common law, then, the risk of injury as a result of such changing conditions is considered a danger or hazard inherent in the employment which the

12. employe is bound to assume. Under the statute, however, the defense that inherent or apparent dangers and hazards contributed to the injury complained of is expressly abrogated in all cases where such injury is a proximate result of negligence on the part of the employer. In view of this conflict, we are required to hold either that the language used in the third provision of §2 is practically without meaning, or that the term "working place," as contained in §3, is to be interpreted in its broad sense to include, in all instances, the place of employment. The one alternative leads to the striking down, in part, of a legislative mandate; the

other, to the harmonious construction of the act as a whole, and in accord with its evident purpose. Clearly, the latter interpretation is to be sustained. It is true that in certain industries the working conditions are necessarily such as to render employment therein more hazardous than in others, but that fact has its bearing on the requirement of §3 that the employer shall be responsible only for such defects as are within his knowledge or might be known to him in the exercise of ordinary care in time to remedy the same. In such industries, as in all others, every risk which the particular employment still involves after the employer has done everything which, in the exercise of ordinary care, he is bound to do for the safety of his employes, is assumed by each of such employes as a matter of law, although the existence of any such risk is to be determined by the jury, under proper instructions, as an issue of fact. Into such risks which cannot be eliminated, the element of negligence on the part of the employer, or of those for whose acts he is responsible, does not enter, and an action may not be successfully maintained under the present statute for injuries resulting therefrom, even though the servant has used due care to avoid such injuries.

Concisely stated, it is our conclusion: (1) That, in all actions to which it is applicable, the act of 1911 abrogates under all circumstances, and however termed, the defense that an injured employe assumed the risk of the hazard or danger which caused his injury, provided such danger or hazard is a result of negligence on the part of the employer, or his agent, servant, officer or other employe; (2) that the act does not restrict the defense that the conduct of the employe under the circumstances which resulted in his injury was not consistent with reasonable care for his own safety; (3) that the knowledge, or opportunity for knowledge, on the part of the

employe of the hazard in question is of importance only as it affects the issue of his care and conduct under the circumstances; and (4) that where the risk which results in injury contains no negligence on the part of the employer, such risk is assumed by the employe. Thus, if it appears that a defect in the place of work, or in the tool, implement or appliance furnished to an employe by his employer, and which causes the former's injury, was unknown to such employer and could not have been known to him in the exercise of ordinary care in time to have remedied the condition, the employe must be held to have assumed the risk of injury therefrom. Similarly, if the injury complained of is the proximate result of a danger or hazard necessarily incident to a particular employment, and which may not be obviated by the employer in the exercise of ordinary care for the safety of his employe, the risk of injury from such danger or hazard is assumed by each of such employes as an element in his contract of employment.

From our conclusions above stated, it follows that in any action brought under the provisions of the act of 1911 to recover for personal injuries sustained by an employe during the course of his employment, the plaintiff is entitled to a judgment if the jury determines: (1) That negligence on the part of the employer, or of those for whose acts he is responsible, proximately contributed to the injury of the employe, *and* (2) that the employe's conduct in the face of the hazard which resulted from such negligence, was characterized by the exercise of due care for his own safety. On the other hand, the injured employe is not entitled to recover if the jury concludes *either*: (1) That his conduct under the circumstances was not characterized by due care for his own safety, in which case he was guilty of contributory negligence, *or* (2) that the danger or hazard which caused the injury was not known and

could not have been known to the employer in time to have remedied the condition, or was necessarily incident to the employment, in which case the master was not negligent and the employe assumed the risk of injury from such danger or hazard by continuing at his work. All questions of negligence, contributory negligence and assumption of risks are to be determined by the jury as issues of fact.

Applying the above conclusions to the present case, we find no substantial error in either the giving or the refusal of the instructions now under considera-

14. tion. The instructions given were more numerous than was necessary and contain some inaccuracy of expression, but the essential elements of negligence on the part of appellant and the necessity for due care on the part of decedent find clear and correct exposition in the charge as a whole. As the jury was expressly instructed that appellee could not recover except on proof of negligence on the part of appellant, its verdict, under the facts in issue, necessarily determined the absence of the element of assumed risk, and the failure to instruct on that issue was, at most, harmless error. *Indianapolis Traction, etc., Co.* v. *Menze* (1909), 173 Ind. 31, 33, 88 N. E. 929, 89 N. E. 370; *City of Muncie* v. *Hey* (1904), 164 Ind. 570, 577, 74 N. E. 250; *Mortimer* v. *Daub* (1912), 52 Ind. App. 30, 37, 98 N. E. 845.

Further objection is made that, in stating the issues presented by the complaint, instruction No. 1, given by the court on its own motion, improperly omits the

15. allegation that appellant employed more than five men in its mine. This fact renders the instruction incomplete, but other instructions referred to the issue, and, in any event, no reversible error may be predicated on such omission since the undisputed evi-

dence shows the employment of more than a hundred men.

The objections urged against instruction No. 2, given by the court on its own motion, and instruction No. 1, given at the request of plaintiff, fall within the rule that the error, if any, in an instruction which tells the jury that the plaintiff, in an action for negligence, is entitled to recover on proof of the allegations of his complaint, is cured by other instructions which fully cover the defense of contributory negligence. *Indiana Union Traction Co.* v. *Keiter* (1910), 175 Ind. 268, 278, 92 N. E. 982; *Home Telephone Co.* v. *Weir* (1913), 53 Ind. App. 466, 469, 101 N. E. 1020. Neither instruction assumed to cover all the issues in the case. *Shirley Hill Coal Co.* v. *Moore* (1913), 181 Ind. 513, 517, 103 N. E. 802.

Appellant's requested instructions Nos. 4, 8, 9 and 10, which were refused, present the issue, in varying form, that the act of 1911 has no application to this case because of the fact that decedent entered the employment of appellant prior to its passage. In the case of *Kokomo Brass Works Co.* v. *Doran* (1915), 59 Ind. App. 583, 590, 105 N. E. 167, it was expressly decided that an employe is entitled to sue under the act in question for injuries received by him after the passage of that act, even though his contract of employment was made before the act was adopted, since the right to sue in tort for injuries received by the employe is no part of the contract relationship, and is subject at all times to legislative change. That decision was approved by this court on petition to transfer and disposes of the contention made by appellant.

The remaining issues suggested by the assignment of errors are either disposed of, in their substance, by our conclusions above stated, or have

been waived by appellant's failure to discuss the same or to cite authorities in support thereof.

No reversible error appearing, the judgment of the trial court is affirmed.

Lairy, J., and Myers, J., dissent.

## DISSENTING OPINION.

LAIRY, J.—The court in deciding the question presented by the record and briefs in this case was required to determine the extent to which the common-law liability of a defendant in actions for negligence falling within the provisions of the statute under consideration is affected by the provisions of such act. After a careful consideration of the facts in question as a whole, and after a consideration of the several sections and provisions of the act, I find myself unable to give my assent to the construction which the court has placed upon some of its provisions. The construction to be placed on this act is of so much importance that I feel constrained to express my views in a separate opinion.

By the first section of the act the rule known at common law as the fellow-servant rule is abrogated where five or more persons are employed. Prior to the enactment of this statute the common-law rule had become firmly settled that a master is not responsible to those engaged in his employment for injuries suffered by them as a result of negligence on the part of other servants engaged in the same common or general employment. The provision of §1 of the act, to the effect that an employer under the conditions stated shall be liable for the injury or death of an employe resulting in whole or in part from the negligence of his, its or their agents, servants, employes or officers, has the effect to make the employer liable to his employes for the negligence of servants engaged in the same common or general em-

ployment to the same extent that he is liable for his own negligence or that of his vice principals.

Appellee asserts that this provision of §1 wholly abrogates the doctrine of assumption of risk in its application to dangers occasioned by the negligence of fellow servants. It has been frequently said that a servant by his contract of employment assumes the risk of all dangers caused by negligence on the part of his fellow servants, which statement is generally regarded as the reason underlying the common-law fellow-servant rule which denies to a servant the right to recover for injuries so caused. Appellant asserts that the provisions of §1 abrogate the fellow-servant rule and that the doctrine of assumption of risk goes with it in so far as the dangers occasioned by the negligent acts of fellow servants are concerned. It is argued that the provision abolishing the fellow-servant rule relieved employes of the assumption of risk as to all dangers resulting from the negligence of fellow servants, and that, in this case, if it appears that the dangerous condition of the face of the coal was the result of negligence on the part of the loaders, who were fellow servants of decedent, then decedent cannot be held to have assumed the risk of such danger even though he knew of such condition or by the exercise of due care could have learned it. While the reasoning seems plausible, and the conclusion reached appears logical, I cannot give my approval to the proposition so advanced. It cannot be true that the provisions contained in §1 of the act entirely absolves the servant from the assumption of risk as to all danger occasioned by the negligence of coservants. At common law a servant was precluded from recovering for an injury resulting from the negligence of a fellow servant without regard to his actual or constructive knowledge of the danger occasioned thereby. The provision of the statute which we are now considering imposes

liability on the employer for negligence of his servant causing injury to a coservant. If the injury to a co-servant results from a dangerous condition caused by the negligence of a fellow servant, he may rely upon such negligence for a recovery in the absence on his part of actual or constructive knowledge of the danger; but, if he knew of the danger occasioned by the negligence of his fellow servant, or if he could have known of it by the exercise of reasonable care, the doctrine of assumed risk applies unless abrogated by some other provision of the act. The liability of the master for the negligence of his employes is thus placed on the same basis as his liability for his own negligence, and that of his vice-principals. To hold otherwise would be to impose upon an employer a greater responsibility in respect to the negligence of an employe than would rest on him on account of his own negligence or that of a vice-principal, as in the latter case he might invoke the doctrine of assumed risk as to known dangers, but in the former he would be precluded by the statute from doing so. I cannot assent to such a construction.

Section 2 of the act deals with the question of contributory negligence. The first sentence places the burden of proving contributory negligence on the employer in conformity with the act of 1899 (Acts 1899 p. 58, §362 Burns 1914). The second sentence is somewhat obscure for the reason that the language employed seems to confuse the defense of contributory negligence with the rule of assumption of risk. The language is: "No such employe who may have been injured or killed shall be held to have been guilty of negligence or contributory negligence by reason of the assumption of the risk thereof in any case where the violation by the employer or his, its or their agents or employes, of any ordinance or statute enacted, or of any rule, regulation or direc-

tion made by any public officer, bureau or commission, was the cause of the injury or death of such employe." In determining the meaning of this sentence, the court will look to the law as it existed prior to the enactment of the statute and to the evil which it was intended to remedy. The courts of last resort in this state had held that a servant could not be denied a recovery on the ground that he had assumed the risk of a danger which was the result of the failure of the master to obey or conform to a statute or ordinance, but the courts likewise held that the master in a case might defend on the ground that the servant was guilty of contributory negligence in encountering the danger so created. *Balzer* v. *Waring* (1911), 176 Ind. 585, 590, 95 N. E. 257, 48 L. R. A. (N. S.) 834; *Davis Coal Co.* v. *Polland* (1901), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319. It was the evident purpose of the legislature to modify the law as thus announced so as to entirely cut off the defense of contributory negligence in cases where the servant voluntarily encountered a danger occasioned by the failure of the master to obey or conform to any ordinance or statute enacted, or to any rule, regulation or direction made by any public officer, bureau or commission, the meaning of the language being that no employe shall be held guilty of contributory negligence by reason of his having voluntarily encountered a known danger of the kind specified. Where an injury results from a danger arising in the manner prescribed, the servant cannot be denied a recovery on the ground of assumption of the risk under the former holdings of this court, and the provision under consideration precludes the employer from making any defense in such a case on the grounds of contributory negligence.

The third sentence of §2 deals with contributory negligence of the servant in encountering dangers other than those specified in the preceding sentence. As to

such dangers it provides that: "In actions brought against any employer under the provisions of this act for the injury or death of any employe, it shall not be a defense that the dangers or hazards inherent or apparent in the employment in which such injured employe was engaged, contributed to such injury." The other parts of this section deal with contributory negligence as a defense, and, while the part quoted is somewhat obscure in its meaning, it is safe to assume that the legislature by this language had reference to the defense of contributory negligence and not to assumption of risk. So construed it means that the fact that an employe knowingly encounters a danger either apparent or inherent which contributed to the injury shall not, of itself, be sufficient to establish contributory negligence as a matter of law. In other words, if an employe voluntarily and knowingly encounters a danger and receives an injury as a result, he will not be precluded on the grounds of contributory negligence from a recovery unless it appears that, in doing so, he did not exercise care and caution commensurate with the known danger. As to whether he did so or not would be a question of fact for the jury to be determined from the facts of each particular case, as §7 of the act provides that all questions of contributory negligence shall be questions of fact for the jury to decide. So construed, §2 is consistent with every other provision of the act and is in no way in conflict with the provisions of §3, which abrogates assumption of risk with reference to the hazards and dangers only which are expressly enumerated therein. If the construction placed upon any part of §2 by the opinion in the case of *Vandalia R. Co.* v. *Stillwell* (1913), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258, is in conflict with the construction here made, that opinion should be modified to the extent of such conflict.

The part of the act which deals with the doctrine of assumption of risk and modifies the common-law rule on this subject is §3.  By the provisions of this section, three classes of risks are specified as to which the doctrine of assumption of risk shall not be held to apply. The first class includes all hazards arising from the violation of a law or ordinance by the employer, or from such violation of any rule, direction or regulation made by any public officer or commission.  The second class includes all hazards which result from, or are created by, the obedience of the injured servant to any order or direction of the employer or of any employe of the master whose orders or directions the injured servant was under obligations to conform to or obey.  The third class includes all dangers arising from any defect in the place of work furnished to the employe by his employer, or to any tool, implement or appliance so furnished, where such employer had knowledge of such defect or might have obtained such knowledge by the exercise of ordinary care in time to have repaired such defect or to have discontinued the use of such working place, tool, implement or appliance before the injury occurred. The statute places upon the employer the burden of proving that he did not have either actual or constructive knowledge of the defect in time to have taken the steps provided for preventing the injury.

In charging negligence on the part of the master with respect to a defective working place, or with respect to any tool, implement, or appliance furnished by the master, it was necessary, prior to the enactment of this statute, for the plaintiff to allege facts showing that the master had either actual knowledge or constructive notice of such defective condition.  The statute has the effect to relieve the plaintiff of the burden of alleging or proving these facts and to place upon the employer the burden of proving that he had no knowl-

edge, either actual or constructive, of the defective condition of such working place, tool, implement, or appliance in time to have repaired the same or discontinued its use before the injury occurred. The section under consideration having abrogated assumption of risk in actions for injury caused by defective conditions of the character above enumerated, it is no longer necessary for the plaintiff to allege or prove that he had no notice or knowledge of such defect.

It is not claimed that the danger which caused the injury to appellee's decedent falls either within the first or second class of risks just enumerated, but it is claimed that the working face of the coal as described in the complaint and in the evidence was the working place of decedent within the meaning of the statute. The pleadings and the evidence in this case show that the condition of the working face of the vein was changed every time the coal was shot down and removed. In the operation of the mine it was necessary to cut under the coal and then to shoot it down and remove it. Every time this operation was repeated a new working face was presented with new conditions and new hazards which the master could not foresee or guard against. The general rule is well settled that it is the master's duty to use reasonable care in providing the servant a safe place to work, but this rule is not applicable to cases where the progress of the very work in which the servant is engaged creates changes in the conditions which surround him from time to time as the work proceeds, thus increasing or diminishing the hazards incident to the work. The reason for thus relaxing the rule in such cases is that it is more than the master can do to keep a changing working place safe from transient shifting hazards which spring up only as the work progresses. The master's duty does not require him to stand over the servant at every stage of the

work as it proceeds to see that the place does not become dangerous on account of changing conditions. *Island Coal Co.* v. *Greenwood* (1898), 151 Ind. 476, 50 N. E. 36; Labatt, Master and Servant §588; *Finalyson* v. *Utica Mining, etc., Co.* (1895), 67 Fed. 507, 14 C. C. A. 492; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Riley* v. *Neptune* (1913), 181 Ind. 228, 103 N. E. 406; *Citrone* v. *O'Rourke Engineering, etc., Co.* (1907), 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340.

This court in the case of *Island Coal Co.* v. *Greenwood, supra,* applied the rule thus stated to a case where a machine operator was injured by the falling of coal which was left by the loaders adhering to the roof and extending back from the face of the vein, holding that the danger of such coal falling was not a danger of the working place, and that, as the opportunity of knowledge by the employe was greater· than that of the employer, such employe must be held to have assumed the risk.

The common law imposes upon the owner or operator of a mine the duty to use ordinary care to provide safe working places to those employed in the mine, and our statute provides for the appointment of a mine boss and requires that he shall visit and examine every working · place in the mine at least every alternate day while the miners are or should be at work, and that he shall examine and see that each working place is properly secured by timbering and that the safety of the mine is assured. He shall see that a sufficient supply of timbers are always on hand at the miner's working place. He shall also see that all loose slate and rock overhead in the passage ways through which the miners have to travel to their work is taken down or carefully secured. This accident occurred in one of the rooms where the mining was being carried on, and not in a

passage way. Where the mine boss has inspected a room and has seen that it is in a safe condition at that time, he is not required to visit it or to inspect it again until the second day thereafter, unless he receives notice from the miners of a dangerous condition which requires his attention. §8580 Burns 1914, Acts 1905 p. 72. In the meantime the miners are engaged at the face of the vein cutting under the coal, blasting it down and removing it. Every time this operation is repeated dangerous conditions may arise which the miners themselves remove as the statute evidently contemplated they should do. During this interval, the miners are creating the transient dangers which arise from the prosecution of the work, and they are required to observe them when they arise and to guard against them. Transient dangers thus arising in the progress of the work were not regarded at common law as dangers of the working place for which the master was held responsible, and there is nothing in our statute which changes the common-law rule in this respect. When a word which has a well-recognized meaning at common law is used in a statute, such word is held to be used in its common-law sense unless the statute clearly shows that it is used in a different sense. Sutherland, Statutory Construction §253. The part of the statute under consideration which provides that a servant shall not be held to assume the risk of dangers caused by any defect in his working place must be held to refer to such dangers as were regarded at common law as dangers of the working place; therefore the transient dangers which may arise due to the prosecution of the work during the intervals between the visits of inspection by the mine boss cannot be regarded as dangers of the working place within the meaning of the statute under consideration, and the rule as to assumption of such risk was not thereby abrogated. As to such dangers so arising,

the servant must be held to have assumed the risk as at common law, in case he knew of them or could have discovered them by the exercise of reasonable care.

Under the issues and the evidence in this case, the first question for the jury to determine was whether or not appellant was guilty of the negligence charged in the complaint. Under the first section of the act, appellant was responsible for any negligence on the part of the loaders in failing to remove the loose coal, and he was also responsible for the negligence of the machine operator, who were all fellow servants of the injured employe. Under this section the negligence of the servant is the negligence of the master, and if the jury found that either the loaders or the machine operator had been guilty of the negligence charged and that such negligence was the proximate cause of the injury the first question was determined adversely to appellant. This question was submitted to the jury under proper instructions, and there was evidence to support a finding and verdict against the defendant so far as this issue is concerned. The finding of the jury on this issue of fact, however, was not alone sufficient to justify a verdict against appellant. Before such a verdict could be properly returned, the jury must also find that appellee's decedent was free from contributory negligence, and that he did not assume the risk so far as these defenses are available to defendant under the provisions of the act of 1911. The first of these questions was submitted to the jury under the instructions of the court and no special objection is urged against any of the instructions on this subject; but the court refused to give proper instructions tendered by appellant on the issue of assumption of risk, and by the instructions given did not submit such question to the jury for its decision.

I am of the opinion that the dangerous condition of

the face of the coal was not a danger of the working place of appellant's decedent. For that reason, the statute does not abrogate the common-law rule as to the assumption of the risk as to such danger in case the dangerous condition was known to decedent or could have been discovered by him in the exercise of due care in time to have avoided it. In the opinion of the writer, a question of fact was presented by the evidence; which should have been submitted to the jury under proper instructions.

Myers, J., concurs.

NOTE.—Reported in 118 N. E. 921, 119 N. E. 485. Liability of a mine owner to servant for injuries by the falling of a mine roof, Ann. Cas. 1912B 577. See under (2, 3, 8) 26 Cyc 1360; (4, 5, 9) 36 Cyc 1106-1114.